WILSON R. HUNTER, Respondent, *v.* MUTUAL RESERVE LIFE INSURANCE COMPANY, Appellant.

1. INSURANCE — STATUTORY STIPULATIONS REQUIRED OF FOREIGN CORPORATIONS AS A CONDITION OF DOING BUSINESS IN A STATE ARE FOR THE BENEFIT OF THOSE ONLY WHO CONTRACT IN RELIANCE THEREON. A statute requiring a foreign insurance company, as a condition of doing business in a state, to execute a power of attorney authorizing the state insurance commissioner to represent it as to the service of process in all proceedings against it therein, which shall be "irrevocable so long as any liability of the company remains outstanding" in the state, is primarily designed for the protection of those citizens of the state who in reliance thereon acquire rights under policies executed with them or for their benefit while they are citizens; it does not create and perpetuate a local forum to which, under the guise of an assignment to a citizen, non-residents may resort for the purpose of instituting litigation upon contracts issued to them at their homes, which by no possibility can be regarded as having been made in reliance upon such provision, against a corporation subject to service at their homes and which prior thereto has attempted in good faith to withdraw from the state resorted to.

2. Effective Revocation, as to Non-residents, of Power of Attorney Authorizing Service of Process upon State Insurance Commissioner.   Where a foreign insurance company, owing to adverse legislation, serves upon such insurance commissioner a written notice withdrawing from the transaction of business in the state and revoking such power of attorney, and thereafter does no business therein, except that premiums and losses on policies theretofore issued to residents of the state were remitted to and from the home office by mail, and in four specific instances, three of which involved the settlement of losses under or a re-adjustment of such policies, and in the fourth a special adjuster, appointed to settle a claim with a supposed non-resident, followed him for such purpose into the state in question into which he had removed, the revocation of the power of attorney is effective as against non-residents who, having taken out policies in their own states, after such revocation, assigned claims against the company arising therefrom to residents of the state for the purpose of placing them in judgment therein; since under such circumstances the company cannot be regarded as having continued the ordinary, substantial and active business in the state necessary to keep alive its power of attorney as to such parties.

3. When Power of Attorney, Irrevocable on Its Face, May Be Revoked.   Nor does the statutory provision as to the irrevocability of the power of attorney prevent its effective revocation as to such non-residents and permit the subsequent prosecution by their assignees of such claims by service upon the insurance commissioner; since a power of attorney, although literally irrevocable, may be revoked unless some interest or right founded or created upon the faith thereof requires its perpetuation and continuance, and by no possibility can such claims be regarded as having been contracted or acquired in reliance thereon; judgments, therefore, based upon such service in actions upon the claims, are void and of no effect.

*Hunter* v. *Mutual Reserve Life Ins. Co.*, 97 App. Div. 222, modified.

(Argued January 15, 1906; decided February 27, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 4, 1904, in favor of plaintiff upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Frank R. Lawrence, George Burnham, Jr.*, and *Gordon T. Hughes* for appellant.   Where a state, having power to

exclude a foreign corporation, admits it upon condition that it agrees to maintain an agency within the state for the service of process, or that it execute a power of attorney for service to a general agent or state officer, such condition or agreement is exacted for the benefit of those who may do business with the company under the permission granted it to enter the foreign state. Such persons, and such only, are the beneficiaries of the agreement or power of attorney. They only can take advantage of it or enforce it. Persons contracting with the company in the state of its creation, or in any state other than that which requires the agency to be established or power to be given, are strangers to the power of attorney, and have no right to have it kept in force for their benefit. (*L. Ins. Co.* v. *French*, 18 How. [U. S.] 404; *L. Ins. Co.* v. *Meyer*, 197 U. S. 407; *C. M. L. Ins. Co.* v. *Spratley*, 172 U. S. 602; *M. R. L. Ins. Co.* v. *Phelps*, 190 U. S. 147; *H. B. Society* v. *Meuhl*, 32 Ky. L. R. 1378; *G. Ins. Co.* v. *Ashby*, 23 Ky. L. R. 1564; *Biggs* v. *M. R. L. Ins. Co.*, 128 N. C. 5; *Moore* v. *M. R. L. Ins. Co.*, 129 N. C. 31; *Fisher* v. *Ins. Co.*, 136 N. C. 217.) In January and February, 1902, when service of the summons in these four cases was made upon the insurance commissioner of North Carolina the company was not engaged in business in North Carolina. (*McCall* v. *Gilbert*, 44 Hun, 522; *K. T. Co.* v. *Jarman*, 187 U. S. 197; *Cady* v. *Colonies*, 119 Fed. Rep. 420; *Frawley* v. *P. C. Co.*, 124 Fed. Rep. 259; *Doe* v. *S. B. Co.*, 104 Fed. Rep. 684; *U. S.* v. *A. B. T. Co.*, 29 Fed. Rep. 17; *People* v. *A. B. T. Co.*, 117 N. Y. 252.) So far as the New York and New Jersey policyholders are concerned, the power of attorney was not only revoked by the company in May, 1899, but it was also revoked by the act of the state of North Carolina itself, which took effect June 1, 1899. (*Doyle* v. *C. Ins. Co.*, 94 U. S. 535; *People* v. *E. T. Co.*, 96 N. Y. 387; *St. Clair* v. *Cox*, 106 U. S. 350.)

*Paul Armitage* and *Albert P. Massey* for respondent. The defendant company continued to do business in North Carolina after the attempted revocation of the power of

attorney given to the insurance commissioner, and was actually doing business within the state on the date when service of process was made in each of the suits resulting in the four judgments. (*C. M. L. Ins. Co.* v. *Spratley*, 172 U. S. 602; *M. R. L. Ins. Co.* v. *Phelps*, 190 U. S. 147.) The insurance commissioner was, at the time of the service of process herein, the agent of defendant for the purpose of service in any action or legal proceeding of every nature of which the courts of North Carolina had jurisdiction. (*Pringle* v. *Woolworth*, 90 N. Y. 509; *People* v. *L. Ins. Co.*, 7 App. Div. 297; *Gibbs* v. *Q. Ins. Co.*, 63 N. Y. 120; *Douglass* v. *Ins. Co.*, 138 N. Y. 220; *M. R. L. Ins. Co.* v. *Phelps*, 190 U. S. 147; *Gibson* v. *Mfg. Ins. Co.*, 144 Mass. 81; *Aldich* v. *Blatchford*, 177 Mass. 369; *People* v. *Fire Assn.*, 92 N. Y. 311; *Vose* v. *Cockroft*, 44 N. Y. 415; *Sherman* v. *McKeon*, 38 N. Y. 266; *Phyfe* v. *Eimer*, 45 N. Y. 102.)

Hiscock, J. The defendant is a life insurance company, organized under the laws of this state. The judgment appealed from awarded recovery upon and for the amount of five personal judgments recovered against it in the state of North Carolina. The validity of said latter judgments as a sufficient basis for the present recovery is dependent upon a purported service of process upon the insurance commissioner of North Carolina as a representative for that purpose of the defendant, the latter in no other manner having been served upon or having appeared in said actions. These original judgments allowed recovery on account of five contracts of insurance issued by defendant, in one case to a resident of North Carolina while it was doing business there, and in the remaining cases to residents, respectively, of New York and New Jersey, who, long after defendant had attempted to withdraw from business in North Carolina, as hereinafter stated, assigned their claims to residents of said state. It is conceded by appellant that the judgment appealed from should be affirmed so far as it allows recovery upon the judgment under the North Carolina policy. But it is claimed that

as to the other purported judgments the courts of the latter state did not acquire jurisdiction by the attempted service of process, and that as to them the judgment before us should be reversed.

We think that the appellant's contention is well founded.

Some of the facts now presented to us and of the principles applicable thereto were fully considered by this court in *Woodward* v. *Mutual Reserve Life Ins. Co.* (178 N. Y. 485), and it will only be necessary now to so far state the facts presented as may be necessary to make plain the reason for distinguishing this case from that.

For several years before March 6, 1899, the defendant had been engaged in transacting its life insurance business in North Carolina under provision for service of process upon a local representative for that purpose. Upon the date mentioned the legislature of that state adopted a statute known as the Willard Law, which created an insurance department and provided that no foreign insurance company should be admitted and authorized to do business until it had complied with certain conditions. Among these was one to the effect that it should " by a duly executed instrument constitute and appoint the insurance commissioner, or his successor, its true and lawful attorney upon whom all lawful process in any action or legal proceedings against it might (may) be served, and therein should (shall) agree that any lawful process against it which may be served upon its said attorney should (shall) be of the same force and validity as if served on the company, and the authority thereof should (shall) continue in force irrevocable so long as any liability of the company remains outstanding in this commonwealth." The defendant duly executed and filed an instrument in accordance with the provisions of said act and continued for a time to transact business.

Upon February 10, 1899, the same legislature had adopted a statute known as the Craig Act, which, in substance, provided that any foreign insurance company desiring to transact business in the state of North Carolina after June first then ensuing must become a domestic corporation of said state, and

attaching penalties to any attempt to transact business in violation of said provisions.

May 17, 1899, defendant's board of directors adopted a formal resolution referring to the Craig Act and stating its determination not to comply therewith but instead to withdraw from the transaction of business in said state, and declaring that the appointment of the insurance commissioner as an attorney upon whom process might be served be "cancelled, revoked and annulled." Upon May 20th duly certified copies of this resolution were filed with and in the office of the insurance commissioner. Upon May 18, 1899, the defendant did withdraw all of its agents from the state of North Carolina, and since that date has had no agent therein, premiums upon policies theretofore issued by it to residents of said state being remitted to it by mail at its home office in New York city where the policies and premiums were payable, and losses upon policies issued by it being paid by checks from said office. Outside of this the defendant does not appear to have transacted any business whatever in the state since its withdrawal save in four specific instances, two of them occurring a considerable period before and two a considerable period after the purported institution against it in the foreign state of the suits in question. Without going into the details of these transactions, it may be briefly stated that three of them involved the settlement of losses under or re-adjustment of policies issued to residents of North Carolina, while the defendant was regularly transacting business there, and in the fourth case a special adjuster appointed to settle a claim with a supposed resident of Washington followed him for such purpose into the state of North Carolina whither he had removed.

More than two years after its above-mentioned withdrawal from, and revocation of power of attorney in, North Carolina, residents of New York and New Jersey made assignment of alleged claims under policies there issued to them to residents of North Carolina, and upon them four of the original judgments in question were secured through a purported

service of process under the power of attorney as already stated.

Defendant conceding its liability upon the judgment upon the North Carolina policy, we need spend no considerable time in reviewing and restating the decision of this court in the *Woodward* case, whereby it was in effect held that a stipulation made by a foreign insurance company as a condition of doing business in North Carolina that process might be served in its behalf upon some official as long as there might be any outstanding liability upon its part under any contract of insurance, is an agreement for the benefit of and enforceable by a holder of a policy issued to him in that state which could not be subsequently canceled or evaded by the insurance company so long as the liability in behalf of such policyholder continued.    The only question which we need discuss is whether the principles of that case, or any others invoked by the present plaintiff, prevented defendant from so canceling and revoking its power of attorney to the superintendent of insurance under the circumstances disclosed as to bar service upon him as its representative in suits upon claims contracted with persons residing outside of the state of North Carolina, and in no way belonging or transferred to a resident of said state until after the attempted revocation.

The learned counsel for the plaintiff largely bases his contention that defendant did not escape service and jurisdiction in North Carolina upon two propositions.    He urges, in the first place, that it did not, as it claimed to, discontinue transacting business there and that for that reason its attempted revocation and withdrawal from the state was ineffective.    And, secondly, he insists that the strict letter of its power of attorney to the insurance commissioner for service of process provides that such authority "shall continue in force irrevocable so long as any liability of the company remains outstanding in said (this) commonwealth," and that at the time purported service was made there were existing liabilities outstanding.

It may be assumed at once that if defendant upon a fair

construction of language and of its acts did continue generally to transact and carry on the business of insurance in North Carolina after its purported revocation of its power of attorney and withdrawal from such state, the latter should be held ineffectual to prevent a continuance of the authority of the insurance official to receive service of a summons. The authorization by the company of service upon said official was a condition of its transacting business in said state, and so long as such transaction of business continued the company should not be allowed to escape the consequences of its agreement by any deceptive or apparent withdrawal. We do not, however, think that such was the true character of its acts. The Craig Act, to which reference has already been made, by its provisions excluded defendant from the transaction of business unless it was willing to become a domestic corporation. It is urged that the Willard Act, to which we have also referred, was passed subsequently and was so inconsistent with the former act as to repeal its prohibitory and penalizing provisions. We scarcely agree with this argument. We think that there was room for the provisions of both statutes. The courts of the state where they were passed in effect have so held, which certainly should be a matter of considerable weight with us in this discussion. (*Debnam* v. *S. B. T. & T. Co.*, 126 N. C. 831; *Layden* v. *Knights of Pythias*, 128 N. C. 546.)

But whether this is so or not, the defendant apparently in good faith did regard the provisions of the Craig Act as driving it from the state, in the absence of its willingness to be incorporated as a domestic corporation, and its acts then and thereafter performed indicate an intention actually and in good faith to cease doing business there, and to our minds the facts agreed upon do not show any subsequent modification of this intention. It had already issued policies and contracted liabilities in the state which could not be ignored. It dealt with these liabilities so far as it could from its office in New York and the specific acts which are detailed in the submission arose in connection with the settlement and treatment of old liabilities and old business. We do not think that there

was any such continuation of an ordinary, substantial and
active insurance business as would be necessary to keep alive
the power of attorney within plaintiff's contention upon this
point. (*Knights Templars' Indemnity Co.* v. *Jarman,* 187
U. S. 197, 204; *Frawley* v. *Penn. Casualty Co.,* 124 Fed.
Rep. 259; *Doe* v. *Springfield Boiler Co.,* 104 Fed. Rep.
684.)

We, therefore, pass to the consideration of plaintiff's sec-
ond contention based upon the wording of the power of
attorney. In so doing and in construing this instrument and
determining whether defendant might revoke it and escape
from its consequences as to the majority of the judgments
involved in this action, we should keep in mind the policy
which led to the adoption of the statute under which it was
executed. This policy, briefly stated, involved and voiced
the determination upon the part of the state that it would not
allow a foreign insurance company to exercise the privilege
of doing business within its limits without securing to its citi-
zens who might there be dealt with, an arrangement by which
they might institute actions and enforce their contracts and
policies at home and without being driven into some foreign
state where the company might have its origin and principal
place of business.

Statutes requiring the execution of some such agreement by
foreign corporations as is invoked against the defendant here,
have always been regarded as primarily designed for the pro-
tection of the citizens of the state enacting the legislation and
who might acquire rights under contracts executed with them
or for their benefit while they were such citizens. Such was
the underlying principle and view which led to the decisions
in the *Woodward* case, in *Lafayette Ins. Co.* v. *French* (18
How. [U. S.], 404), in *Conn. Mut. Life Ins. Co.* v. *Sprat-
ley* (172 U. S. 602), and in *St. Clair* v. *Cox* (106 U. S. 350).

It would be quite beyond the spirit of those decisions to
hold and we cannot believe that it was the further policy of
such legislation to create and perpetuate a local forum to
which under guise of an assignment to some resident, non-

residents of far distant states might flock for the purpose of instituting litigation upon contracts issued to them at their homes, against a corporation there readily subject to service and which long before had attempted in good faith to withdraw from the jurisdiction thus hunted out.

Holding this view, we are not willing to decide that defendant's power of attorney was irrevocable as against the four foreign claims upon which recovery was had in North Carolina. It is true that, as the statute required, said power of attorney upon its face was irrevocable so long as any liability of the company should remain outstanding in said state. But it is well settled that a power of attorney, although by its literal terms irrevocable, may be revoked unless some interest or right founded or created upon the faith thereof requires its perpetuation and continuance. (*Hunt* v. *Rousmanier's Admr.*, 8 Wheaton, 174; *Knapp* v. *Alvord*, 10 Paige, 205; Story on Agency [3rd ed.], sec. 476.)

The citizens of North Carolina who had taken contracts from the defendant while it was there doing business in reliance upon this power of attorney which had been executed for their protection under the requirements of the statute were entitled to have it remain unrevoked as provided by its terms. As we have already seen, they are to be regarded as having made their contracts upon the faith of it, and as against them defendant could not escape from its consequences.

But the plaintiffs in the North Carolina actions, who secured their claims from non-resident assignors, occupied no such position. These claims under contracts executed in other states cannot by any possibility be regarded as having been contracted or acquired in reliance upon this provision for service within the state of North Carolina. The assignees, who saw fit to embark upon the acquisition of foreign claims, did not do so in innocent reliance upon the right to bring such suits in their own state, for long before they began the accumulation of claims against the defendant it had formally, and, as we believe, in good faith, withdrawn from the state where they lived and given formal notice of its revocation

of the power of attorney. They did not acquire any such right to enforce jurisdiction in the courts of their own state against the defendant as makes it in any way inequitable or unjust that the power of attorney should be revoked. They are not of the class for whose protection it was originally executed. They have not acquired any rights upon the faith of it. The contracts which they seek to enforce were not secured by defendant from those who expected protection under it. We not only think that it is legal and equitable that defendant's revocation should be effective as against these parties, but that it would be extremely inequitable to hold the reverse.

The learned counsel for the plaintiff has called to our attention many cases which he claims are opposed to the views expressed. While some of them may contain isolated expressions which seem to sustain his view, we think that all of them which ought to be at all controlling upon this court may be clearly distinguished from the case at bar, and we shall only refer briefly to a few of them.

In *Connecticut Mut. Life Ins. Co.* v. *Spratley* (172 U. S. 602) it appeared that plaintiff in error had been engaged for many years in transacting a general insurance business in Tennessee under a statute which, amongst other things, provided that any corporation that had any transaction with persons or concerning any property situated in the state through any agency whatever acting for it within the state should be held to be doing business within the meaning of the act, and also that process might be served upon any agent of the corporation found within the county where the suit was brought no matter what character of agent such person might be. Thereafter, having issued many policies, the corporation assumed to withdraw from the state by recalling its agents and refusing to take new risks or issue new policies within the state. At this time many policies were outstanding upon which it continued to collect premiums through an agent residing in another state. Action was brought in the courts of Tennessee upon policies issued for the benefit of residents of that state while

the company was regularly engaged in doing business there and before its attempt to withdraw, and service in said action was made upon a conceded representative of the company who had come into the state for the purpose of adjusting and settling losses under said policies.   It was held that under the circumstances of that case the company was doing business within the state and that service was properly made upon it in the manner indicated.   It will be at once observed that independent of the statutory provision defining what should be held to constitute doing business within the meaning of the act under which plaintiff in error operated in the state of Tennessee, this decision was entirely in line with the principle adjudicated by this court in the *Woodward* case.   The rights involved were those of a policyholder resident in the state who had there contracted with the company while it was transacting business in that state under a statute which coupled, with permission, certain conditions for the service of process, and the principle upheld was that the company could not defeat the rights of the policyholder and by an attempted withdrawal from the state force him into some foreign jurisdiction.

*Mutual Reserve Fund Life Association* v. *Phelps* (190 U. S. 147) was based upon the same principle of upholding in favor of a citizen of Kentucky who had received from the plaintiff in error a policy of insurance while it was regularly transacting business in that state, the right to institute action by service of process upon the insurance commissioner in accordance with the provisions of a statute which permitted the company to transact business in that state under conditions allowing such service of process, notwithstanding the company after issuing the policy had attempted to withdraw from the state and cancel the right of service upon the commissioner.

In *Birch* v. *Mutual Reserve Life Ins. Co.* (91 App Div. 384, affirmed without opinion, 181 N. Y. 583) judgment was recovered in the state of North Carolina upon various contracts of life insurance executed in that state while the defendant was regularly engaged in transacting its life insurance

business there.     Action was commenced by service of process upon the insurance commissioner, and it was held that such service was good, although the defendant had attempted to withdraw from the state and revoke its power of attorney before service was made.

We see nothing in any of these cases which impairs the force of the conclusions reached by us.

The judgment appealed from should be modified by reducing the same by the amount of $8,792.42, with interest thereon from May 5th, 1902, and as so modified should be affirmed, without costs to either party.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur; WILLARD BARTLETT, J., not sitting.

Judgment accordingly.