ROBINSON v. MUTUAL RESERVE LIFE INS. CO.

SCOVILL v. SAME.

(Circuit Court, S. D. New York. November 7, 1910.)

No. 141.

1. INSURANCE (§ 72*)—INSURANCE COMPANIES—DISTRIBUTION OF ASSETS IN INSOLVENCY—EFFECT OF FOREIGN LAWS IMPOUNDING FUNDS.

The French and Spanish statutes relating to the creation of a fund by foreign life insurance companies for the protection of local policy holders construed with respect to the rights in such funds of members and death claimants of an insolvent American mutual association, and, in the absence of a construction by those countries, such funds *held* applicable in the first instance to the payment of claims for death losses, and, it appearing that the funds were sufficient to pay the death claims under French

and Spanish policies in full, the claimants held not entitled to share in the distribution of the general assets in this country, with creditors who could not resort to such funds.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig. § 72.*]

2. CORPORATIONS (§ 691*)—FOREIGN CORPORATIONS—EFFECT OF DISSOLUTION—JURISDICTION OF COURTS.

The statutes of a state cannot give its courts jurisdiction of actions in personam against a foreign corporation after it has been dissolved.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2674; Dec. Dig. § 691.*]

3. INSURANCE (§ 611*) — BREACH OF CONTRACT BY INSURER — REMEDY OF INSURED.

By the law of New York, damages are not recoverable against an insurance company for its refusal to continue its contracts of insurance, and such law governs in an action brought in that state unless a different law is incorporated into the contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1518; Dec. Dig. § 611.*]

4. RECEIVERS (§ 82*)—ADMINISTRATION OF ESTATE—AUTHORITY TO ENTER INTO STIPULATION.

Receivers appointed for an insolvent corporation in the first instance represent the company and all creditors, and a stipulation made by them with particular creditors binds all, in the absence of seasonable and proper objection.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 151; Dec. Dig. § 82.*]

5. INSURANCE (§ 362*)—NONPAYMENT OF ASSESSMENTS—EXCUSES FOR NONPAYMENT.

There is no obligation on the part of an insured in an assessment life company, after his policy has been declared lapsed by the company because of his refusal to pay an invalid assessment, to tender subsequent dues or assessments, and his failure to do so does not defeat the claims of the beneficiaries under the policy against the company or its assets in insolvency.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 925, 930; Dec. Dig. § 362.*]

6. INSURANCE (§ 72*)—INSURANCE COMPANIES—DISTRIBUTION OF ASSETS IN INSOLVENCY.

In the distribution of the assets of an insolvent life insurance association which had issued policies in violation of the laws of the state where the contracts were made, and which were therefore void and were disaffirmed by the holders, who sued to recover the premiums paid before the insolvency proceedings were instituted, such policy holders are to be included in the class of general creditors for the amount of such premiums.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig. § 72.*]

7. INSURANCE (§ 392*)—NONPAYMENT OF ASSESSMENTS—WAIVER.

Where an insured under an assessment policy paid an assessment after the time limited, its acceptance and retention by the company was a waiver of the delay which did not debar the beneficiary after the death of the insured from proving her claim against the estate of the company in insolvency.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1041; Dec. Dig. § 392.*

Waiver by acceptance of premiums, see note to Life Ins. Clearing Co. v. Bullock, 33 C. C. A. 369.]

8. INSURANCE (§ 248*)—RIGHT OF INSURED TO RESCIND CONTRACT—FRAUDU-
LENT REPRESENTATIONS.

A policy holder in a life insurance company who was induced to insure
by false and fraudulent representations imputable to the company has the
right both by the English and American law to rescind the contract and
recover the premiums paid.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 534; Dec. Dig.
§ 248.*]

9. INSURANCE (§ 72*)—INSURANCE COMPANIES—DISTRIBUTION OF ASSETS IN IN-
SOLVENCY—CLAIMS ON POLICIES TRANSFERRED.

In proceedings for winding up the affairs of an insolvent life insurance
company, claims of policy holders in another company whose risks were
transferred to the insolvent under the law of Illinois considered, and *held*
governed by the terms of their policies which had not been surrendered or
exchanged.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig.
§ 72.*]

10. INSURANCE (§ 245*)—ASSESSMENT COMPANIES—EFFECT OF NONPAYMENT OF
EXCESSIVE ASSESSMENTS.

Where an insured in an assessment life company failed to pay an exces-
sive assessment made, and nothing further appears, the inference is that
he intended to abandon the contract, if a considerable time elapsed after
the default and before his death and he did nothing by way of protest
or tender; but the presumption is not conclusive and may be rebutted.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 523; Dec. Dig.
§ 245.*]

11. INSURANCE (§ 72*) — DISTRIBUTION OF ASSETS OF INSOLVENT COMPANY —
COSTS IN SUITS ON POLICIES.

In the distribution of the assets of an insolvent life insurance company
the costs in actions brought on policies before the insolvency proceedings
in which claims were established which are allowed are costs of the cause,
and not properly a part of the claims on the policies.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig.
§ 72.*]

12. INSURANCE (§ 72*)—DISTRIBUTION OF ASSETS OF INSOLVENT COMPANY—AL-
LOWANCES.

In a suit to wind up the affairs of an insolvent life insurance company,
where, after the fund has been brought into court and nothing remains
but to make distribution between the creditors, representatives of differ-
ent classes of creditors are permitted to intervene, they are not entitled
to allowances from the fund on account of their expenses incurred in their
interventions nor from the money awarded to creditors of the same class-
es as the interveners, who did not join in the interventions.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig.
§ 72.*]

13. INSURANCE (§ 72*)—DISTRIBUTION OF ASSETS OF INSOLVENT COMPANY—AL-
LOWANCES.

In a suit by creditors to wind up the affairs of an insolvent life insur-
ance company, counsel for complainants are entitled to an allowance from
the fund brought into court for distribution for services rendered, even
after the appointment of receivers in the general conduct of the cause,
which were beneficial to the creditors generally.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 98; Dec. Dig.
§ 72.*]

14. INSURANCE (§ 21*)—"PRIVILEGE."

The word "privilege" in the French statute, relating to the creation of a
fund by foreign life insurance companies for the protection of local policy

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

holders, means a preference to holders of insurance obligations over other debts in the distribution of the fund.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §. 23; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 6, pp. 5583–5589; vol. 8, p. 7764.]

In Equity. Suits by James C. Robinson and by Reuben O. Scovill, respectively, against the Mutual Reserve Life Insurance Company. On exceptions to report and supplemental reports of special master. See, also, 159 Fed. 564, 175 Fed. 624, 629.

William Beverly Winslow, for complainants.

Thomas L. Feitner, Sullivan & Cromwell, Joshua Matlack, John T. McGovern, Sewell T. Tyng, Albert P. Massey, Miles M. Dawson, Robert Van Iderstein, Van Iderstein, Badger & Barker, Gilbert E. Roe, Wollman & Wollman, David J. Gallert, Clark Varnum, George W. Harper, Blandy, Mooney & Shipman, Morris Hillquit, Florence J. Sullivan, E. N. Dollin, and John M. Scoble, for exceptants.

Report Filed July 1, 1910.

WARD, Circuit Judge. The master presents the questions of fact and of law involved in this matter so clearly that there will be no advantage in restating them, and I will therefore give my conclusions only in disposing of the exceptions to it.

First. The exceptions filed on behalf of Lemarquis and others and of Mary Aline Duval Thiebaud, individually, etc., are overruled.

The French and Spanish statutes upon which these exceptions are founded have never been passed upon by the courts of those countries and have never been applied by those governments in the case of an insolvent insurance company. Nor is there in either country any statute or departmental regulation as to the distribution of the assets of an insolvent insurance company. Therefore the construction of the statutes is for the court.

I think the French statute was intended to create a fund out of which the insurance obligations of foreign insurance companies contracted in France and Algeria should, if necessary, be paid before any other debt of the companies. Statutes of a more or less similar nature are common in the states of this country. Though the amount of the fund under the French statute is determined as to one element by the mathematical reserve of outstanding policies, I think the fund itself was not intended to secure any particular policy, but was for the benefit of the whole body of French and Algerian insured, described by the French word "assures," in the plural. The word of the statute "privilege" means a preference to holders of insurance obligations over other debts in the distribution of the fund. The fund is the property of the company, subject, however, to be applied by the French government to the protection of its insured.

France can hardly have intended to give partial protection to death claimants, but entire protection to claims of living policy holders for

their mathematical reserves. If a person insured under a French policy for $10,000 had died during the first year of the insurance, and his estate had recovered a judgment for $10,000 in France which the company before insolvency refused to pay, I cannot believe that the government would simply have awarded it out of this fund the miserable pittance of the mathematical reserve of the policy before the death. The meaning of the Spanish statute is still clearer. It requires foreign insurance companies to deposit a fund for the security of insurances effected in Spain out of a percentage of premiums collected there.

In the absence of statutes or adjudications or departmental regulations covering the application of these foreign funds in the case of insolvency, I will presume that the foreign courts will apply it as we do; that is, pay the death claimants first as against the living policy holders, who are members of the association. Of course, the application would be different in the case of a stock corporation whose living policy holders would have a right as creditors to share in such a fund pro rata with the death claimants. If it were conceded that the purpose of the French statute was to give living policy holders a right which they did not possess under their contracts or by the American law, still these French claimants would not have the benefit of the statute because the Council of State May 28, 1910, held in the case of the Equitable Assurance Society that article 7 of the Law of 1905 is not retroactive and does not modify previously existing contracts.

If the funds in question are distributed in accordance with these views, the funds in France and Spain were sufficient to pay the death claimants in those countries in full, and they should not be allowed to recover anything out of the fund in this court.

It is objected that under the equity rule a secured creditor may collect what he can before realizing his collateral, provided that he collect from all sources no more than the amount of his claim. I do not think the above conclusion inconsistent with this contention. The proofs showing that these claimants have a security sufficient to pay them in full, they should not be allowed to delay or disturb the distribution of the fund in this country because they have not been at the pains of liquidating their security. When a creditor can look to two funds, he may be required to resort to that one on which other creditors have no claim if he will not be injured thereby. Story's Eq. Jur. 633.

It is further objected that these funds are no longer the company's, but have been segregated and are the property of the persons for whose benefit they have been so segregated. If this be admitted, the segregation in accordance with the views heretofore expressed is for the benefit of death claimants in the first instance, and the funds, if regarded as theirs, are enough to pay the claims in full.

The question is to a large extent a practical one. There is a fund to be distributed in France in which only certain creditors are interested, and another fund to be distributed here in which all creditors are interested. The natural and reasonable course would have

been for the French and Spanish creditors to first ascertain what they were entitled to receive out of the fund reserved for their exclusive benefit, and then make their claim upon the fund here. On the other hand, the fund in this country cannot be distributed with exact equity in the first place if it is not known how much the French and Spanish claimants will recover abroad. All this has been patent to them for some two years, but they have deliberately postponed the liquidation of the funds abroad. This court said in an opinion handed down December 28, 1909:

. "The master properly excluded death claims of citizens and residents of foreign countries in which the government has sequestered deposits made by the association and the company for the benefit of the resident policy holders, and its free assets in banks, etc. It being found as a fact that the receivers have applied for the return of those funds for distribution here without avail, and that they are sufficient in amount to cover the death claims maturing in those countries before February 15, 1908, those claimants are properly relegated to the assets so sequestered. Presumably they will be paid in full. There is nothing to show that they have done anything to realize from the funds impounded abroad. It would not be fair to the domestic creditors either to postpone distribution until the foreign creditors have collected what they can abroad, or to permit the foreign creditors to prove their claims in full here and leave the receivers to collect any surplus there may be coming to the domestic creditors from abroad. The time is approaching when the assets should be distributed and claimants should know exactly what they have to expect as the outcome of this unfortunate business." Robinson v. Mutual Reserve Life Ins. Co., 175 Fed. 628.

Second. The exceptions filed by Victor J. Loring and others, Turley & Turley and others, Burns Bros., Frank J. Carroll, and Martin Fitzgerald, Ann Campbell, Edward I. Robinson and another, and the first, second, and third exceptions of Christina S. Dogge are overruled for reasons stated in a former opinion on exceptions to the master's report filed July 1, 1909, reported in 175 Fed. 624.

Third. The exceptions filed on behalf of A. E. Lloyd and others are overruled so far as they depend upon the North Carolina judgments, because the courts had no jurisdiction of the defendant after it was dissolved. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Pendleton v. Russell, 144 U. S. 640, 12 Sup. Ct. 743, 36 L. Ed. 574; Rodgers v. Insurance Co., 148 N. Y. 34, 42 N. E. 515. The statute of North Carolina could no more give jurisdiction in such a case, at least as to assets without the state, than it could give jurisdiction over the estate of a dead defendant or of a nonresident not personally served. Cases which hold that service upon an official agent of the state brings the company into court, even after it has ceased to do business in the state, like Woodward v. Mutual Reserve Co., 178 N. Y. 485, 71 N. E. 10, 102 Am. St. Rep. 519, affirmed 200 U. S. 612, 26 Sup. Ct. 752, 50 L. Ed. 620, do not apply to a company which has ceased to exist.

If the causes of action on which these judgments were rendered are considered, the claims were rightly dismissed because by the law of this state no damages can be awarded for the refusal of an insurance company to continue its contract of insurance. The insured may either proceed in equity to compel the reinstatement of the policy, or he may leave the liability of the insurer to await its maturity by death

or disability. Kelly v. Security Mutual Life Ins. Co., 186 N. Y. 16, 78 N. E. 584. These are the only remedies afforded in New York, and I do not think that the law of North Carolina which recognizes a living policy holder's claim for damages was incorporated into the contract so as to require the courts of this state which recognize no such remedy to enforce the foreign law. The law of the forum regulates the bringing of suits. Scudder v. Bank, 91 U. S. 406, 412, 23 L. Ed. 245. If the cause of action had been merged in a judgment binding on the defendant, as was the case in Hunter v. Mutual Reserve Co., 184 N. Y. 136, 76 N. E. 1072, and 192 N. Y. 85, 84 N. E. 576, the question would not arise.

Fourth. The exceptions of Magnus L. Holt, Anthony W. Moseley, Jerry Lynch, and George W. Beatty, disability claimants, are sustained because the proofs, which are all by deposition, though meager, are uncontradicted to the effect that these exceptants are permanently disabled and wholly incapacitated.

Fifth. The first, second, and third exceptions of Christina S. Dogge filed July 29, 1910, to the report filed July 1, 1909, are too late. Her fifth exception to this report was withdrawn at the argument and her fourth exception, as to the Northwestern policies to the master's finding of fact 7 and conclusion of law thereon, viz., that the extra mortality lien laid by the Mutual Reserve upon holders of Northwestern policies was invalid, are overruled because those policies were carried into the Mutual Reserve, so far as appears, automatically under the statute of Illinois, and the express conditions of their policies as to premiums or assessments could not be altered by the contract of transfer between the Northwestern Life Association and the Mutual Reserve. The third exception of Scovill and others (which seems to have been also separately filed) as to preferential awards to certain lawyers is overruled, on the strength of Barnes v. Newcomb, 89 N. Y. 108, approved in Matter of Attorney General v. North American Life Ins. Co., 91 N. Y. 62, 43 Am. Rep. 648.

The second exception of Reuben O. Scovill and others is premature because it relates to matters reserved for a supplemental report of the special master to be subsequently considered. .

Sixth. The exceptions of Mary Fox Gray and Ida Frances Fox are sustained because the master dismissed their claims on the ground of abandonment by the insured; whereas, by a stipulation entered into between them and the receivers which was received in evidence without objection, their claim was to be allowed in full if the assessment No. 97, which the insured refused to pay as invalid by the law of California, was invalid by that law. Benjamin v. Mutual Reserve Fund Life Association, 146 Cal. 46, 79 Pac. 517.

May 23, 1910, this stipulation was offered in evidence without objection on the part of any one; Mr. Roe being present. August 5th Mr. Roe at the argcment before me objected to the stipulation as not binding on creditors represented by him. The receivers in the first instance represent the company and all creditors, and their admissions bind all in the absence of seasonable and proper objection. It would lead to very unfair results if, after a long litigation in which parties had relied upon formal stipulations of receivers, any creditor might

object that the stipulation was not binding at the final hearing. Moreover, in this case order No. 55 provided that any claimant might contest the claim of any other claimant by filing with the master his objection in writing thereto at any time before the expiration of 10 days after the expiration of 30 days from the publication of the notice provided for in that order, which time expired April 10, 1910. There is no proof that any such proper or definite objection in writing was made. There was no obligation upon the part of the insured after his policy was declared lapsed by the company because of his refusal to pay an invalid assessment to tender subsequent dues or assessments. Shaw v. Insurance Co., 69 N. Y. 286; Meeder v. Provident Soc., 171 N. Y. 432, 64 N. E. 167; Reed v. Provident Soc., 190 N. Y. 111, 82 N. E. 734.

Seventh. The exceptions of W. J. Keary, executor, are overruled because the insured died August 8, 1907, and there is no claim that the assessment he failed to pay February 1, 1900, was invalid.

Eighth. The exceptions on behalf of Emil Nathan & Co. are sustained because the claimant proved a state of facts upon which the presumption of the death of the insured fairly arose, and he should not have been affected by the hearsay answer in a deposition of one of his witnesses, which answer he moved to have stricken out, that somebody told the witness he had seen the insured in Panama.

Ninth. The exceptions of George Stead and others are sustained. The master disallowed these claims on the ground that there was no proof to sustain them. But the receivers admitted, and the papers on file show, that the Mutual Reserve Company issued policies to these exceptants, and on the same day by another instrument, called "Special Renewal Contract," appointed them to the class of executive agents in New Jersey, restricted to the number of 200. The policies make no reference whatever to the special renewal contracts, but both contracts are to be read together, and, so read, show that these exceptants received advantages not mentioned in their policies, which were not received by other insurants in the same class and of equal expectation of life. The transaction in both these respects violated the express provisions of the law of New Jersey (Act March 19, 1895 [2 Gen. St. p. 1783]). Therefore the contract is void and to be treated as nonexistent, and the exceptants are entitled to recover premiums paid as moneys had and received to their use. Cyc. 9, 475; U. S. Bank v. Owens, 2 Pet. 527, 539, 7 L. Ed. 508; Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347; Urwan v. Insurance Co., 125 Wis. 349, 103 N. W. 1102; Insurance Co. v. Strong, 127 Mich. 346, 86 N. W. 825. The exceptants disaffirmed the contract by bringing suit to recover premiums before the appointment of the receivers and must be included in the class of general creditors for the amount of premiums (not including expenses, etc., of Richard C. Barrington), with interest to the time of the appointment of the receivers.

Tenth. The exceptions filed by Tillie Taylor are sustained. The insured under assessment policy of the Mutual Reserve dated December 1, 1888, died January 29, 1908. The assessment of December, 1907, was paid to the company January 27, 1908, though not within 30 days, as required by the policy. The fact that it was never returned

by the company amounts in my opinion to a waiver of any right to declare the policy forfeited. Claim was made in the proceeding in this court within one year from the death of the insured.

Exceptions to Supplemental Report filed August 1, 1910.

The master having merely allowed or disallowed claims without stating the facts or the reasons, I am obliged to state the facts and the reasons for my conclusions more fully than in the case of the report just considered.

First. The exception of Frank J. Carroll, assignee of eight Irish judgments, is overruled. I see no reason whatever for giving this claim a preference over general creditors. Master's Report, fols. 13–15.

Second. The exceptions of Christina S. Dogge to the allowance of Carroll's claim, the second and fifth as to the proof of the judgments having been waived by counsel at the argument, are overruled. I think the certified records and the testimony taken by commission in Ireland show that the special appearance of the company defendant became general, and it was bound by the default judgments.

Third. The exception of Martin Fitzgerald is sustained to the extent of allowing his claim as a general creditor only. The proof satisfies me that he was induced to insure by false and fraudulent representations imputable to the Mutual Reserve Company. Therefore he had a right to rescind the contract and to recover premiums paid by him as moneys had and received to his use by the English law, expressly subject to which his contract was made (Foster v. Mutual Reserve, 19 L. T. Rep. 342, 20 L. T. Rep. 715; Merino v. Mutual Reserve, 21 L. T. Rep. 167), as well as by our own law (Moore v. Mutual Reserve Association, 121 App. Div. 335, 106 N. Y. Supp. 255). Master's Report, fol. 32.

Fourth. The remaining exceptions apply to claims almost all of which are Illinois contracts and depend so largely upon the law of that state that I will briefly state it, together with the relevant facts.

In December, 1889, the Covenant Mutual Benefit Association transferred its membership to the Northwestern Masonic Aid Association of Illinois. In June, 1896, the latter association changed its name to Northwestern Life Assurance Company. In September, 1900, the whole membership of the Northwestern Company was transferred to and assumed by the Mutual Reserve Fund Life Association. These transfers were made under a statute of Illinois regulating corporations for furnishing life or accident insurance on the assessment plan. Hurd's Rev. St. Ill. 1909, p. 1320, art. 245, is as follows:

"When and how corporation may transfer its risks. Sec. 16. No such corporation under the laws of this state shall transfer its risks to or reinsure them in any other corporation unless the contract of transfer or reinsurance is first submitted to and approved by a two-thirds vote of a meeting of the insured called to consider the same of which meeting a written or printed notice shall be mailed to each member, certificate or policy holder at least thirty days before the day fixed for such meeting. If such transfer or reinsurance shall be approved every member, certificate or policy holder of the corporation who shall file with the secretary thereof within ten days after the meeting a written notice of his preference to be transferred to some other cor-

poration than that named in the contract shall be accorded all the rights and privileges, if any, in aid of such transfer as would have been accorded under the terms of such contract had he been transferred to the corporation named therein.  *  *  *"

The transfer of the membership of the Northwestern Assurance Company to the Mutual Reserve was ratified by a two-thirds vote of the members of the Northwestern Company present at a meeting called for that purpose, and the legal result was that all members who did not ask in writing to be transferred to some other association became ipso facto members of the Mutual Reserve. But nothing contained in the contract of transfer between the two associations could alter the express terms of the original contracts of the members of the Northwestern Company if not surrendered and exchanged for Mutual Reserve certificates.

Article 237 provides:

"Sec. 8. Every such life insurance corporation shall accumulate or maintain a reserve or emergency fund equal to such sum as might be realized from one assessment on, or periodical payment by policy or certificate holders thereof and in no event less than the amount of its maximum policy or certificate. Such fund if not already accumulated shall be accumulated by every such existing corporation within six months from the time this act takes effect and by every corporation hereafter formed under this act within six months from the date of its incorporation and shall be held for the purposes for which such fund was created or accumulated. In case such fund or any portion thereof shall have been used by the corporation for the purpose or purposes for which the same was created or accumulated and the amount thereof thereby reduced to less than the amount of one death assessment or periodical payment, the amount of such reduction below the amount of one death assessment or periodical payment shall be made by and restored to said fund within six months thereafter. Such fund may be held in cash or invested in the same class of securities required by law for the investment of funds by insurance corporations and nothing herein contained shall prevent the creation and accumulation of other funds in excess of the amount herein required to provide for the purposes of such corporation.  *  *  *"

It is quite clear that the law contemplates the maintenance of a specific fund separate from the company's general assets.

Fifth. All the claims allowed by the master in article 3 of his report are on policies of the Northwestern Life Assurance Company. The material facts in relation to them are as follows:

Devroe E. Gettman, Isabella Matson, Eliza I. Macy, Susan M. Durham, Gertrude Manasse, Ella V. Bishop, Margaret J. Harney, William Ollendorf, Clifton C. Coldren and others, and Mary Cary are claimants on policies under which the insured defaulted in the payment of a premium not alleged to have been invalid. Alice Shue, Mary E. Turnbull, Simon H. Kohn, and John Munch are claimants on policies under which the insured defaulted in the payment of premiums which were shown to have been excessive and therefore invalid.

All of the foregoing claims except Mary Cary's were originally filed for the full amount of the policies; but the claims were by stipulation subsequently made with the receivers changed to claims for the value of the policy in full-paid insurance at the time of default, payable at the death of the insured. Mary Cary's claim was for extended insurance for the face of the policy.

There is on the face of the policy a table showing the privileges: given the insured in case of failure to pay premiums, one of which is to have, without any action on his part, the value of the policy in paid-up insurance payable at his death to a stated amount or upon application to the company to have a loan, or, lastly, to have extended insurance for the face of the policy.

Inasmuch as all these claims are for full-paid insurance payable at death, except Mary Cary's, which is for extended insurance, I do not think that the rights of the claimants differ, whether the premium on which they defaulted was valid or invalid.

The policies contain the following relevant clause:

"The privileges of paid-up and extended insurance, loan or cash surrender values, and the dividends provided for by this policy, are available only when the reserve funds of the company are in excess of the amount required by law, and not less than $100,000."

It lay upon the receivers to show that there was no emergency fund or none in excess of $100,000 at the time of the default, and there is no proof on the subject at all.

I do not think that the Northwestern Company and the Mutual Reserve Company by anything they put into the contract of transfer in September, 1900, could subject these policies to a lien not provided for in them. The exceptions of Devroe E. Gettman, Eliza I. Macy, Susan M. Durham, Gertrude Manasse, Ella V. Bishop, Margaret J. Harney, W. M. Ollendorf, and W. W. Koehler are sustained, and the exceptions of Christina S. Dogge are overruled.

Sixth. The claims allowed by the master in article 4 of his report are upon assessment certificates of membership of the Northwestern Masonic Aid Association.

Sarah C. Glazer, Ella C. Ellis, Adm'x, Emeline A. Hemstreet, Lurancey E. Richman, Albert Grannis and another, Frank W. Rieder, Adm'r, et al., Mary E. Dunham et al., Adam N. Horn et al., Petrolina Benes, Sarah F. Lindsay et al., Sarah Merkel, Wealthy J. Sinclair, and Mabel L. Mallette claim on certificates under which the insured refused to pay an assessment which was in excess of the amount mentioned in their certificates and in the by-laws on the ground that it was excessive, from which time the Mutual Reserve treated the certificates as lapsed. As the insured correctly disputed the assessment, they were not obliged to do anything thereafter in the further performance of their part of the contracts. They had a right to go into equity to have their certificates reinstated, or to wait until death occurred, when their representatives could claim the full amount, less whatever assessments the insured should have paid. As the amount of these assessments has not been proved, and I think cannot be proved, these claims as reported are allowed. The exceptions of Christina S. Dogge are overruled.

Seventh. The master disallowed the following claims in article 5 of his report on assessment certificates under which the insured failed to pay excessive and invalid assessments.

Where an insured fails to pay an excessive assessment, he may do so because he wishes to abandon the contract or because he is stand-

ing upon his rights and is willing to pay proper assessments. Where nothing is shown except the mere failure to pay, I think the inference should be that the insured is not standing on his rights, especially if he does nothing in the way of protest or tender for a considerable time between the failure to pay and the date of his death.

Viola Murfitt is a claimant on a certificate of the Mutual Reserve on the life of J. M. Terwilliger, who defaulted on an excessive assessment payable May 2, 1898, and died May 16, 1898. May 24, 1898, the Mutual Reserve, insisting that the policy was lapsed, forwarded at the request of the claimant blank proofs of death. Reliance is placed on the possession by the insured of a quinquennial bond, which it is said should have been applied to the payment of the assessment; but the bond was not payable at that time. The claim should have been allowed, less deduction of such assessments as would have been proper, because the fair inference is that the parties in interest were standing on their rights. The claimant's exceptions are sustained.

Sarah A. Williams is a claimant on a similar certificate under which the insured paid assessments down to May 2, 1898, and died February 10, 1903. Plainly the inference to be drawn from his conduct in doing nothing between May 2, 1898, and the date of his death, February 10, 1903, is that he abandoned the contract and was not standing upon his rights. He had two quinquennial bonds, but they were not payable at the date of the default in paying the assessment. The claim was properly disallowed, and the claimant's exceptions are overruled.

Bridget M. Kennedy and another are claimants upon a similar certificate. The insured refused to pay an assessment called July 1, 1901, because the company insisted that her policy was to be reduced by the sum of $1,835.80, and died June 7, 1904. She had in her possession a quinquennial bond, but it was not payable at the time of the default. This claim should have been allowed, with a deduction of such assessments as the insured ought to have paid. The claimant's exceptions are sustained to this extent.

Maud Judson and another are claimants on a certificate of membership of the Covenant Mutual Benefit Association on the life of Lucius Judson, dated April 6, 1872, whose membership was transferred in December, 1889, to the Northwestern Life Association and by it to the Mutual Reserve in September, 1900. The insured died September 17, 1907. The Mutual Reserve refused payment September 20, 1907. The insured failed to pay an excessive assessment. It is not stated when this assessment was made nor why the insured failed to pay it. His conduct being as consistent with the abandonment of the contract as with standing on his rights, the claim was properly disallowed, and the claimant's exceptions are overruled.

Robert H. Dunn is a claimant upon a similar certificate dated July 3, 1880, on the life of Luke Dunn, who died June 1, 1905. December 4, 1906, the Mutual Reserve waived proofs and denied liability. The insured failed to pay an excessive assessment. The claim was properly disallowed because the conduct of the insured was consistent

with his abandonment of the contract. The claimant's exceptions are overruled.

Ann Fowlie is a claimant on a certificate of membership of the Northwestern Life Association dated May 10, 1892, on the life of George Fowlie, who died August 15, 1906. The Mutual Reserve waived proofs and denied liability April 16, 1907. The insured failed to pay an excessive assessment. It is not shown when this assessment was called, nor any explanation given of the failure to pay it. The claim was properly disallowed as upon an abandoned contract. The claimant's exceptions are overruled.

Augusta Kuntz is a claimant under two certificates of membership of the Northwestern Life Association dated October 23, 1896, on the life of John Kuntz, who died March 21, 1903. The Mutual Reserve waived proofs and denied liability January 26, 1904. The claim was properly disallowed as on an abandoned contract. The claimant's exceptions are overruled.

Hannah Robinson is a claimant on three certificates of membership of the Northwestern Life Association on the life of David W. Robinson dated September 5, 1892, who died February 5, 1907. The Mutual Reserve refused to pay and denied liability January 9, 1908. It is not proved when the assessment was made nor why the insured failed to pay it. The claim was properly disallowed as on an abandoned contract. The claimant's exceptions are overruled.

Eighth. It is contended that costs incurred in suits on claims allowed here which were brought in the courts of Illinois before the appointment of receivers should be regarded as a part of the expense of administering the fund in this court and given a preference over all other claims. The costs in those suits are costs of the cause and are not properly a part of the claims on the policies in this court. The exceptions of Devroe E. Gettman and others are overruled.

Ninth. It is also contended that the claims on Northwestern policies are entitled to a preference out of the reserve or emergency fund of the Northwestern Life Assurance Company similar to the preference allowed to death claims on assessment policies of the Mutual Reserve Company. There is no evidence that there ever was such a fund, and certainly none has been traced into the hands of the receivers, so that no such preference can be allowed. The exceptions of Devroe E. Gettman and others are overruled.

The third and fourth reports of the special master are so full and clear that I need only state my conclusions.

### The Third Report Filed October 28, 1910.

Orders were entered permitting interventions in this cause by creditors of various classes to present not only their own claims, but the claims "of all such other persons as may join in said petition and pay their proportionate share of the expenses thereof." This phrase is commonly used in representative or class bills such as creditors' and stockholders' bills. Because no single creditor or stockholder may maintain such suits upon his own claim alone, he is required to bring

it also on behalf of all others similarly situated. When one creditor or stockholder has brought such a proceeding, no other creditor or stockholder may maintain another. Therefore other creditors or stockholders who may wish to take part in the suit are invited to join in it upon condition of contributing to its expenses. In this case, however, a representative suit had already been brought against the Mutual Reserve by the complainants in this cause, and all the creditors of the company who had filed claims were already in the suit so far as distribution was concerned. These petitions of intervention were permitted after the purposes of the suit had been practically accomplished, and they concerned only the distribution of the fund which the complainants had brought into court. No other creditor did join in any one of the interventions except John J. Whipple in that of Edward I. Robinson. Therefore no allowances can be awarded to the interveners on the ground that they have or any of them has, brought a fund into court or preserved such a fund, upon which grounds most of the cases cited by the interveners proceed. The interveners suggest that the portions of the fund which are awarded to the prevailing classes are to be regarded as separate funds and treated as if the interveners by independent suits had created or brought them into court subject to the same rules as to allowances. I cannot take this view. How far such contentions may be carried is to be seen from the fact that the interveners who have been defeated claim that they also are entitled to allowances out of the fund.

It is next suggested that the court may deduct from moneys coming to creditors of the same class as interveners who have prevailed a contribution to the expenses of those interveners, on the ground that such creditors have benefited by their services and are therefore under an implied obligation to pay. The presumption is that the priorities in the fund would have been correctly determined whether there had been intervention or not. It may be, as contended, that receivers, generally speaking, should stand neutral, e. g., between creditors contesting for priority. But certainly, if there had been no contest, it would have been the duty of the court and its receivers to see that the fund was properly distributed.

Two of the interventions stand on a somewhat different ground. Mr. Ruston seems to have suggested the institution of proceedings in equity against Frederick A. Burnham, former president of the Mutual Reserve, which have resulted in a settlement with his estate for $5,000 in cash and securities of the face value of $25,000. If suggestions to receivers who act upon them successfully were to justify allowances, a very dangerous and uncertain avenue of charging funds in court would be opened. Mr. Lewis, on the other hand, intervening for Elizabeth A. Sharman, did obtain for his clients and others similarly situated the sum of $15,000 by taking it out of the fund in court adversely to the receivers on the ground that they never were entitled to it. This did amount, I think, to the creation of a fund, and I think he is entitled to an allowance of $1,000 to be deducted ratably from the sums going to the participants in that fund.

I fully recognize the moral weight of the claims of the prevailing

interveners and appreciate that they, by relying upon a view of the law different from that taken by the special master, have spent much time and effort on behalf of other people gratuitously. I must confess that my own impression was that the law would allow them compensation, and I would gladly give it but for the fact that the decisions, especially those of the federal courts, in my opinion show that the conclusion of the special master is right. The exceptions of Christina S. Dogge, E. V. Catoe, Edward I. Robinson and another, Joseph W. Hyams, Turley & Turley, Harry D. Nims, Adm'r, Anne Campbell, and Elizabeth A. Sharman, except so far as an allowance to her counsel is concerned, are overruled.

### The Fourth Report Filed October 31, 1910.

The allowances made by the special master to the receivers and to the complainants' counsel seem at first sight large in comparison to the amount of the fund; but for nearly three years the receivership has moved smoothly and successfully over many rough places. It bristled with legal and business complications which were surmounted only by the patience and intelligence of all concerned, conspicuously of the receivers and of the counsel for complainants. I think the amount of the allowances fully justified. There is an exception to any allowance to the counsel of complainants for services after the appointment of receivers. It is said that the claim of the complainants after that time was hostile to the claims of other creditors, and therefore that they ceased to represent all concerned. This is true so far as questions of priority are concerned, but not as to the general conduct of the cause. Mr. Winslow's services of this character were so helpful that I would strain a point, if necessary, to sustain the allowance; but authority is found for it in Burden Co. v. Ferris Co., 87 Fed. 810, 31 C. C. A. 233.

There should also be added an allowance of $5,000 to the special master for his last three reports, and for any services in connection therewith he may have to render hereafter and of $75 for his disbursements. The exceptions of Anne Campbell and of Harry D. Nims, Adm'r, to the allowances made by the special master, are overruled.

The petition of Blandy, Mooney & Shipman for an allowance for disbursements is denied.

The preference claimed by the state of New York for franchise taxes for the year 1907 payable June 1, 1908, after the appointment of the receivers, $4,239.52, and for expenses of examination of the company by the Insurance Department in the sum of $8,884.35, was considered by me upon exceptions to a former report of the special master and overruled in an opinion published in 175 Fed. 624. Leave, however, was reserved to the state to argue the question when the report for final distribution should come on for hearing, and I have been favored with an able brief by the Attorney General, but remain of my original opinion. The case of New Jersey v. Anderson, 203 U. S. 494, 27 Sup. Ct. 137, 51 L. Ed. 284, largely relied upon by him, arose

under Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), which expressly gives a preference to all state taxes.

A decree may be submitted in accordance with this opinion.