THE STATE ex rel. PACIFIC MUTUAL LIFE INSURANCE COMPANY v. J. HUGO GRIMM, Judge.

**In Banc, January 27, 1912.**

1. **SUMMONS: Service: Foreign Insurance Company.** The only method by which a foreign insurance company can be served with process in this State is by service upon the State Superintendent of Insurance in the manner provided by section 7042, Revised Statutes 1909.

2. ————: ————: ————: **Suit by Non-resident: On Foreign Contract.** The statute providing the means of serving process upon a foreign insurance company licensed to do business in

this State, and declaring that service upon the Superintendent of Insurance "in all proceedings that may be instituted against such company, in any court of this State, or in any court of the United States in this State . . . shall be valid and binding, and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State," is unlimited in its application, and was not designed to protect only citizens of this State in their rights acquired under contracts made with them by foreign insurance companies, but is broad enough to provide means by which a non-resident of this State can have a valid service of process in a suit against a foreign insurance company licensed to do business in this State on a policy made in another State with a citizen thereof.

> *Held*, by GRAVES, J., dissenting, that there can be gathered from the statute a clear legislative intent to limit the jurisdiction of courts to actions upon contracts made in this State. The statute limits the class of cases in which the substituted service provided for therein can be effectively had, and a case by a non-resident on an insurance policy made in another State by a foreign insurance company with an insured who at the time the contract was made and at the time of his death was a resident of such other State, is not a case of that class.

3. ———: ———: ———: **Motion to Quash.** Whether a non-resident of this State can sue in the courts of this State a foreign insurance company licensed to do business in this State upon a contract of insurance made outside of this State, is a question that cannot strictly be raised by a motion to quash the sheriff's return, and the motion may properly be overruled where the return shows a service in strict conformity with the statute. A motion to quash the return will lie only when the return itself is insufficient.

4. ———: ———: ———: **Want of Jurisdiction.** Where the want of jurisdiction over defendant's person appears, not on the face of the return showing a defective service but on the face of the petition, the question must be raised by special demurrer, and where the objection is based upon facts *de hors* the petition and return, it must be made by answer, that is, a special plea contained in the answer, which may be joined with a defense to the merits without being regarded as waiving the latter.

5. ———: ———: ———: **Motion to Quash: Motion to Strike Out: Admission.** Plaintiff's motion to strike from the files defendant's motion to quash the sheriff's return of service of process, does not admit the allegations of defendant's motion, where the questions attempted to be raised by defendant's motion cannot be properly raised thereby.

6. ——: ——: ——: ——: Jurisdiction: Waiver: General Appearance. Tender of matters of defense or abatement which do not appear in the record proper, and which challenge the right of plaintiff to maintain the action on the contract sued on, is a waiver of the right to have quashed the sheriff's return of service of process, no matter how it was served, and is such a general appearance as gives the court jurisdiction. Where a non-resident of this State sued a foreign insurance company on an insurance policy issued to her husband in another State, who died in that State, and the company alleged in its motion to quash the return that her husband committed suicide, that under the *lex loci* suicide was a bar to a recovery on the policy, and that witnesses by whom the fact of suicide could be shown could not be induced to attend the trial in this State or give their deposition, and therefore the suit was inequitable and a fraud on the court and the defendant, the defendant made such an entrance of appearance as waived the objection that the court had no jurisdiction, for it would require the introduction of testimony to establish those allegations, and they are an invitation to the court to pass judgment upon them, and that it could not do unless the court had jurisdiction over the parties litigant and the subject-matter of the suit.

*Held*, by GRAVES, J., dissenting, that the motion to quash the return, when all its allegations and bearings are considered, amounts only to a challenge of the jurisdiction of the court, specially made, and the appearance, being thus specially made for the one purpose of challenging the jurisdiction, should not be held to confer jurisdiction over the person.

7. NON-RESIDENT: Suit in This State: Inability to Obtain Testimony. The fact that the witnesses to establish one of the defenses of a foreign insurance company, when sued in this State by a non-resident, upon a policy executed in another State, reside in such other State, and may not respond to the process of the Missouri court when subpoenaed, or that they cannot be compelled by the laws of the State of their residence to give their depositions, is not a ground for the Missouri court to decline to take jurisdiction of the case—especially where there is no showing that they have refused to obey a subpoena or to give their depositions.

8. ——: ——: No Injury to Plaintiff. The fact that no serious injury would result to the non-resident plaintiff if the court declined to take jurisdiction of her suit against a foreign insurance company and that defendant's witnesses reside outside of the State, will not justify the court in declining to try the case.

State ex rel. v. Grimm.

9. ———: ———: **Comity.** The courts of this State, since the enactment of Secs. 1736 and 1737, R. S. 1909, no longer, as a matter of comity, have the right to decline to assume jurisdiction over the suit of a non-resident, where by the statutes they have such jurisdiction, and a citizen of this State under its laws is entitled to maintain a similar action.

> *Held*, by GRAVES, J., dissenting, that the statutes do not make it obligatory upon the courts of this State to assume jurisdiction over causes of action arising in other States. The courts in such cases are governed by comity and not by statute. Said statutes were not intended to abate the rule theretofore existing.

10. ———: ———: ———: **U. S. Constitution.** Under the Constitution of the United States the right to sue and defend in the courts of this State must be allowed to the citizens of any other State to the precise extent that it is allowed to citizens of this State. The courts of Missouri are open to all citizens of another State to sue upon any valid transitory cause of action upon which a citizen of this State might maintain a cause of action.

> *Held*, by GRAVES, J., dissenting, that the U. S. Constitution does make it obligatory for the courts of this State to assume jurisdiction over causes of action arising in other jurisdictions.

11. ———: ———: **Transitory Action: Insurance Policy.** An accident insurance policy is a lawful contract, and the suit thereon is transitory, and a citizen of this State may sue thereon; and hence, a non-resident holder of such a contract, namely, the beneficiary, may maintain a suit thereon in the courts of this State, although the contract was made by a foreign insurance company with her husband who at the time it was made and at the time of his death was a resident of another State.

Prohibition.

WRIT DENIED.

*Jones, Jones, Hocker & Davis, Fred Herrington, Robertson & Robertson* and *Seddon & Holland* for relators; *George H. Mason, Holt, Wheeler & Sidley* and *M. P. Cornelius* of counsel.

(1) The cirucit court has no jurisdiction, because: (a) the service of process was insufficient; and (b) the courts of Missouri have no jurisdiction over foreign

insurance companies in causes of action arising out of business done in other States with citizens of those States. Sec. 7042, R. S. 1909; Insurance Co. v. French, 18 How. (U. S.) 404; St. Clair v. Cox, 106 U. S. 350; Life Ass'n v. McDonough, 204 U. S. 8; Hunter v. Ins. Co., 218 U. S. 586; Stewart v. Harmon, 8 Fed. 190; Berry v. Indemnity Co., 46 Fed. 439; Plate Glass Co. v. Ins. Co., 55 Fed. 27; Sawyer v. Ins. Co., 46 Vt. 697; Middough v. Railroad, 51 Mo. 520; Baile v. Ins. Co., 68 Mo. 617.  (2) The jurisdiction of the circuit court has been invoked by plaintiff in fraud of relators and for purposes of oppression. The maintenance of the actions in the circuit court will be an abuse of jurisdiction.  (a)  The laws of Illinois alone govern the construction and enforcement of the insurance contracts. Thompson v. Insurance Co., 169 Mo. 12; McGeehan v. Insurance Co., 131 Mo. App. 420. (b) Plaintiff brought the Missouri actions for the purpose of oppressing relators and to prevent them from making their defense. They cannot compel the giving of testimony in Illinois. Puterbaugh v. Smith, 131 Ill. 199; McIntyre v. People, 227 Ill. 26; Martin v. People, 77 Ill. App. 311. (c) Jurisdiction should never be taken where justice cannot be done and where parties will be denied due process of law.  Mfg. Co. v. Du Bois, 165 Mass. 117; Pietraroia v. R. & F. Co., 197 N. Y. 434; Bank v. Knox, 47 Mo. 333.  (3) If relators are compelled to submit themselves to the jurisdiction of the circuit court they will be denied due process of law contrary to the Fourteenth Amendment to the Constitution of the United States. Cases under point one; County of San Mateo v. Railroad, 13 Fed. 722; In re Rosser, 101 Fed. 567; Moss v. Whitzell, 108 Fed 579.  (4)  There has been no waiver of relators' rights to question and resist the attempted jurisdiction of the circuit court.  Newcomb v. Railroad, 182 Mo. 707; Thomasson v. Ins. Co., 217 Mo. 485.  There have been no general appearances and no pleas to the merits in the actions in the

circuit court. Thomasson v. Ins. Co., 169 Mo. 12. (5) Prohibition is the proper remedy. (a) Want of jurisdiction appears on the record. Railroad v. Wear, 135 Mo. 230; State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Oliver, 163 Mo. 679. (b) Extraordinary circumstances exist indicating the necessity for the writ. State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Fort, 107 Mo. App. 328. (c) Appeal or writ of error will be totally inadequate. State ex rel. v. Fort, 107 Mo. App. 337; State ex rel. v. Elkin, 130 Mo. 90. (d) Great hardships, oppression and injustice will result if the writ is not made absolute, whereas no hardship will result if jurisdiction is denied and the writ is made permanent. (6) The Superintendent of the Insurance Department of the State of Missouri is not the agent of a foreign insurance company doing business in this State to receive service of process in a cause of action arising outside of the State, under a policy issued and delivered outside of the State of Missouri and issued and delivered in the State where the cause of action accrued, and when the plaintiff is a non-resident of the State of Missouri. Sec. 7042, R. S. 1909; Sec. 7991, R. S. 1899; Sec. 5912, R. S. 1889; Laws 1885, p. 183; Sec. 6013, R. S. 1879; Laws 1874, sec. 4, p. 74; Latimer v. Railroad, 43 Mo. 105; 3 Cook on Corporations, sec. 758; 19 Cyc., sec. 8, 1340; Smith v. Ins. Co., 14 Allen (Mass.) 336; Sawyer v. Ins. Co., 46 Vt. 697; Mill Co. v. Swede Iron Co., 32 N. J. L. 15; Car Co. v. Harrison, 122 Ala. 149; Bawknight v. Ins. Co., 55 Ga. 194; 13 Am. & Eng. Ency. Law (2 Ed.), 897; Morawetz on Private Corporations (3 Ed.), sec. 981, note 3; Fairfax, etc., Co. v. Chambers, 75 Md. 604; Robinson v. Nav. Co., 112 N. Y. 315; Railroad v. Carr, 76 Ala. 388; Railway v. Wayne Circuit Judge, 102 Mich. 248; Strom v. Railroad, 81 Minn. 346; Rodgers v. Mutual, etc., Ass'n, 17 S. C. 406; Peters v. Neely, 84 Tenn. 275; Swarts v. Grain and Stock Co., 166 Fed. 338; Mutual Reserve Fund L. Ass'n v. Boyer, 50 L. R. A. (Kans.)

538; Hunter v. Mutual Reserve Life Ins. Co., 218 U. S. 573; Rorer on Interstate Law (2 Ed.), 32-35; St. Clair v. Cox, 106 U. S. 350; Mutual Reserve Fund Life Ass'n v. Phelps, 190 U. S. 147; 6 Commentaries on the Law of Corp. (Thompson), sec. 8003. (7) As both the plaintiffs and defendants in the court below were non-residents of the State of Missouri, and as the cause of action involved in the suits in question arose entirely in a foreign jurisdiction, the attempted service upon defendants by serving the Superintendent of Insurance was not valid. R. S. 1909, sec. 7042; Sawyer v. Ins. Co., 46 Vt. 697; Rehm v. Insurance Co., 25 N. E. 173; Insurance Co. v. McDonald, 204 U. S. 8; Stewart v. Harmon, 8 Fed. 190; Berry v. Indemnity Co., 46 Fed. 439; Glass Co. v. Ins. Co., 55 Fed. 27; Ins. Co. v. French, 18 How. 404. (8) Where a cause of action arises in a foreign State between parties who are not citizens of the State of Missouri, the courts of the latter State can assume jurisdiction of the cause, but they do so only as a matter of comity, and will not assume such jurisdiction where the effect of so doing would be to work an oppression or a fraud upon the defendant. Bank v. Knox, 47 Mo. 333; Christian v. Williams, 35 Mo. App. 297; Fears v. Riley, 149 Mo. 149; Holker v. Hennessy, 141 Mo. 527; Byler v. Jones, 79 Mo. 261; Vastine v. Bast, 41 Mo. 493; Wonderly v. Lafayette County, 150 Mo. 635; Dunlap v. Cody, 35 Ia. 260; Bryant v. McLure, 44 Mo. App. 553; Derby v. Donohue, 206 Mo. 699; Bishop v. Seal, 87 Mo. App. 256; Dickson v. Kempensky, 96 Mo. 259; Mfg. Co. v. DuBois, 165 Mass. 117; Bank v. Rindge, 154 Mass. 203; Post v. Railroad, 144 Mass. 321; 2 Cyc. 638; Morris v. Railroad, 78 Tex. 17; Burdick v. Freeman, 120 N. Y. 420; Dewitt v. Buchanan, 4 Barb. (N. Y.) 31; Cooley on Constitutional Limitations, p. 187; Wright v. Cradlebaugh, 3 Nev. 341; 2 Kent's Comm. 13; In re Rosser, 101 Fed. 567; County of San Mateo v. Railroad, 13

Fed. 722; Moss v. Whitzell, 108 Fed. 579, 582. (9) Under the circumstances of this case prohibition is the proper remedy: State ex rel. v. Bradley, 193 Mo. 33; State ex rel. v. Eby, 170; State ex rel. v. Reynolds, 209 Mo. 161; State ex rel. v. Aloe, 152 Mo. 467.

*Judson & Green, Runnels, Burry & Johnstone* and *Barclay, Flauntleroy & Cullen* for respondents.

(1) Plaintiff's right to sue defendant in Missouri. Barrel Steamship Co. v. Kane, 170 U. S. 100; Johnson v. Ins. Co., 123 Mass. 432; Mohr v. Ins. Companies, 12 Fed. 474. (2) Service of process. Sec. 7042, R. S. 1909; Johnson v. Ins. Co., 132 Mass. 432; Deatrick v. Ins. Co., 107 Va. 602; Reeves v. Railroad, 121 Ga. 602. All the cases referred to in relator's brief's miss the point involved in the case at bar. Our statute, provides for service of process upon the Insurance Commissioner, not only in all proceedings that may be instituted against such company in the courts of this State, but also in all suits that may be instituted against such company "in any court of the United States in this State." Nearly all suits instituted against insurance companies in the Federal courts of this State are instituted by non-residents of the State, and the Legislature evidently intended to authorize such suits by non-residents who might sue in the Federal courts upon polices issued outside the State as well as upon those issued within it. The right to obtain service under the provisions of our Missouri statute is not limited to suits upon policies of insurance which were issued in this State. The statute expressly says in all proceedings that may be instituted against such company. (3) Under Section 2 of Art. 4 of the U. S. Constitution, the plaintiff below has an absolute right to maintain this action in the courts of Missouri. Deatrick v. Ins. Co., 107 Va. 602; Cole v. Cunningham, 133 U. S. 113. (4) The

joinder in the motion of these allegations of matters of defense or abatement which do not appear in the record proper, and which unquestionably go to the right of plaintiff to maintain any action on these policies in this State, no matter how the summons was served, would be a waiver of the right to have the return quashed, even if such right had ever existed. Newcomb v. Railroad, 182 Mo. 687; Wicecarver v. Ins. Co., 137 Mo. App. 247; Thomasson v. Ins. Co., 217 Mo. 485; Mohr v. Railroad, 140 Fed. 921. (5) The plea of another action pending in a foreign jurisdiction is not good as a defense, even when regularly pleaded in an answer. Trimble v. Railroad, 180 Mo. 583; Schmidt v. Foster, 130 Iowa, 347; Brown v. Allebach, 166 Fed. 488. (6) Even if it were a defense the pendency of the other suit could not be taken advantage of by such a motion as we have here. · Unless it appears from the face of the petition the objection of another action pending must be made by appearance and answer. R. S. 1909, secs. 1800, 1804; Warder v. Henry, 117 Mo. 541; Thompson v. Holden, 117 Mo. 130; State ex rel. v. Dougherty, 45 Mo. 294; Lord v. Aultman, 75 Ind. 162; Ryan v. Mills, 129 Mich. 170; Crease v. Babcock, 10 Metcalf (Mass.) 525; Gardner v. Kiel, 182 Pa. St. 194; Fish v. Young, 127 Wis. 149. (7) If this pleading of relator be treated as merely a motion to dismiss the petition for the reasons therein alleged, it is insufficient. It is fundamental in pleading that such motions to dismiss must be based entirely upon matters appearing on the face of the record. Such motions must not involve the merits and they must be based entirely upon the face of the record. 14 Cyc. 431; Bryant v. McLure, 44 Mo. App. 553; Covert v. Von Hodimont, 103 Tenn. 363; Bliss v. Smith, 42 Vt. 198; Moore v. Helm, 74 Ala. 368; Embree v. McLennan, 18 Wash. 651. (8) "Due process of law" as applied to this case means only that this relator shall have its case tried in the same manner that any other case is

tried, and that it shall have the same rights in reference to compulsory attendance of witnesses, etc., that any citizen of this State would have under a similar state of facts. It has no reference to rules of evidence or the manner of enforcing attendance of witnesses. Eyerman v. Blakesley, 78 Mo. 145; Geary v. Kansas City, 138 Mo. 251. (9) If the insurance companies in their answers renew all the charges of fraud made in this motion we shall then be prepared to show that they are all utterly without foundation in fact. (10) The joinder in this proceeding of fourteen different defendants of fourteen different actions in the circuit court is not warranted. It renders erroneous a single rule in prohibition, intended to apply to fourteen cases, in thirteen of which each petition has no interest whatsoever. The misjoinder should discharge the rule. R. S. 1909, secs. 2624, 1795; Heitkamp v. LaMotte Co., 59 Mo. App. 244; Colvin v. Havenstein, 110 Mo. 575. (11) The history and evolution of section 7042; R. S. 1909, and as traced in the Missouri decisions, indicate how wide of sound interpretation thereof this present action for prohibition is. R. S. 1855, p. 885, sec. 1; R. S. 1889, sec. 5912; R. S. 1899, sec. 7991 (same as Sec. 7042, R. S. 1909). (12) The statute bearing on the merits (R. S. 1909, sec. 7042) is of ancient origin (R. S. 1855, p. 885, sec. 1, since enlarged), was in its then form interpreted more than fifty years ago, and more recently amended, enlarged and explained; its meaning is no longer uncertain, and is in accord with the rulings of the circuit judges thereon. McAllister v. Ins. Co., 28 Mo. 214; McNichol v. Reporting Agency, 74 Mo. 457; Youree v. Ins. Co., 180 Mo. 153. (13) Jurisdiction of the circuit court over the persons of defendants below is disputed by them on facts set up there in their motions to quash and dismiss. Those motions were overruled; thereby the circuit court found those allegations of fact against defendants, and denied those facts. Prohibition is not available to re-

view that finding as to those facts, but appeal or error should be invoked. High, Extra. Rem., sec. 771; State v. Judge, 11 La. Ann. 696. (14) If Sec. 7042, R. S. 1909, is not broad enough to permit process of summons thereunder to be supported as against a foreign insurance company, doing business in Missouri, such company could be brought in by process of summons under the general Code of Practice, as the insurance law is not exclusive and the general law as to all corporations may be invoked to acquire jurisdiction over the person by process. Youree v. Ins. Co., 180 Mo. 153. (15) Even if service of summons on defendants was insufficient or irregular, new or alias process could issue to obtain correct service. Prohibition to stop all action by the circuit court is scarcely appropriate to cure such defects in procedure. R. S. 1909, sec. 1786. (16) Defective service of one or even several writs would give no ground for prohibition in respect of an action against a foreign corporation doing business (and hence having an agent) in Missouri, for such defect would not deprive the court of power to proceed to obtain due and proper service, under our statute law. (17) The defendants' several motions to quash and dismiss are too ample, oratorical, and broad. If the service in question should be quashed, it would afford no ground to dismiss the action. The defendant's prayer to dismiss is of itself an invocation of the jurisdiction of the circuit court, and hence amounts to an appearance and defeats the motion to quash. Jones v. Andrews, 10 Wall. 327; Moon on Removal, sec. 207; Handy v. Ins. Co., 37 Ohio St. 366; McKillup v. Hansey, 80 Neb. 264; Dudley v. White, 44 Fla. 264; Bucklin v. Strickler, 32 Neb. 602; Welch v. Ayres, 43 Neb. 326; Teater v. King, 35 Wash. 138; Everett v. Wilson, 34 Colo. 476; Graham v. Tanquerry, 58 Kan. 233. (18) A non-resident may sue a non-resident in Missouri whether the persons involved are

individual and natural or artificial incorporated bodies. State ex rel. v. Sale, 232 Mo. 166. (19) The actions in the circuit court are personal in nature (for breach of contract) and transitory. (20) There is no doubt of jurisdiction to maintain suit in Missouri on contracts made and broken in other States when the defendant is found here; and many statutes as well as decisions expressly recognize that jurisdiction. Mahr v. Railway, 140 Fed. 921; State ex rel. v. Sale, 232 Mo. 166.

WOODSON, J.—This is an original proceeding instituted in this court by the petitioner, seeking to prohibit the respondent, as judge of the circuit court of the city of St. Louis, from further proceeding with the trial of the case of Florence W. Rawn v. Pacific Life Insurance Company, the petitioner, now pending in said court.

Because of the unsettled or undetermined facts of the case, in order to get a full and correct view of the legal propositions presented by the record, it will be necessary to set out the petition filed in this court, asking for a preliminary rule of prohibition, and the return thereto filed by the respondent.

All formal parts wherever appearing will be omitted. The petition for the writ of prohibition is as follows:

"Now, at this day comes the petitioner, the Pacific Life Insurance Company, and shows to this honorable court that it is a corporation, duly organized and existing under the laws of the State of California, and duly licensed to do business in this State, in the State of Illinois and elsewhere; that the respondent, the Honorable J. Hugo Grimm, during the times hereinafter mentioned was, and at the present time is, the duly elected, qualified and acting Judge of the circuit court for the Eighth Judicial Circuit of Missouri and judge of Division No. 1 of said court; that heretofore,

on the 14th day of March, 1911, there was commenced in said court an action at law by one Florence Willis Rawn, as plaintiff against your petitioner, as defendant, to recover the sum of fourteen thousand dollars, with interest and costs; that summons was issued by the clerk of said court, and that said summons was served upon the Superintendent of the Insurance Department of the State of Missouri on the 15th day of March, 1911, as appears from the return of the sheriff attached to the petition in said case. That thereafter said case was duly assigned to Division No. 1 of said court, of which division the respondent is judge.

"Said petition, is in words and figures as follows:

"Plaintiff, for her cause of action against defendant, alleges that:

"1. Defendant is a corporation, organized under the laws of the State of California, having an office in the city of Chicago, Illinois, and was and is duly authorized to transact business in the State of Illinois and Missouri, and is engaged in the business of general life insurance, including insuring lives against death caused by accident.

"2. On or about February 6, 1910, defendant, at its principal place of business in Chicago, in the State of Illinois, made and executed its certain instrument in writing, dated on that day, and numbered 1,060,317, commonly called a policy of accident life insurance, and afterwards, on said day, for a valuable consideration to it paid by Ira G. Rawn, at said Chicago, delivered said policy to said Ira G. Rawn, and thereby then and there in and by said policy defendant promised to pay to plaintiff the sum of ten thousand dollars, together with a further sum as accumulations as hereinafter stated, in the event of the death of said Ira G. Rawn from bodily injuries sustained during the life of said policy through accidental means resulting directly, independently and exclusively of all other causes in said death, if said death occurred within ninety days of the date of said injury. A copy of said policy, together with certain indorsements thereon, attached hereto as 'Exhibit A.'

"3. Said policy provided that upon the payment of each successive year's premiums on said policy, if paid annually in advance, the principal sum of said policy should be increased by ten per cent thereof. Said policy was issued in continuation of a former policy of insurance for the like amount, and said former policy, of which the present one is a continuation, was

originally issued on the 6th day of February, 1906, and annual premiums were paid thereon from that time down to and including the premium paid on February 6, 1910, and it was agreed that said policy numbered 1,060,317 should have like force and effect as if dated February 6, 1906. Attached to said policy, and forming part thereof, is a document providing that said policy of life insurance should bear accumulations of ten per cent annual increase, the same as and with like effect as if said policy had been dated on February 6, 1906, and premiums had been paid thereon. A copy of said last mentioned document, or rider, is attached to this petition as 'Exhibit B.' By reason of said provisions of said policy and the payment to defendant of premiums becoming due for renewal of said insurance in February, 1907, 1908, 1909 and 1910, the amount defendant promised to pay plaintiff on the death of said Ira G. Rawn as aforesaid was increased by the sum of four thousand dollars.

"4. On February 1, 1906, and from then until the death of said Ira G. Rawn, as hereinafter mentioned, plaintiff was the wife of said Ira G. Rawn and the beneficiary named in said policy, and during all that time she and said Ira G. Rawn were citizens of the State of Illinois and residents of Chicago aforesaid.

"5. On July 20, 1910, said Ira G. Rawn received bodily injuries through accidental means, namely, a bullet wound through the body, and such injuries resulted directly, independently and exclusively of all other causes in the death of said Ira G. Rawn on the day last aforesaid.

"6. Plaintiff, as the beneficiary and legal holder of said policy, as soon as reasonably possible after the injury and death of said Ira G. Rawn gave written notice, with full particulars of said injuries and death, and the full name and address of the assured to defendant, at its home office in Los Angeles, California, and within two months thereafter, on September 14, 1910, affirmative proof of his death was filed with said defendant at its said office.

"7. All premiums upon the policies herein mentioned were promptly paid by said Ira G. Rawn during his lifetime, and he kept and performed all things in said policy mentioned on his part to be kept and performed, and plaintiff has kept and performed all things in said policy mentioned on her part to be kept and performed.

"8. By the statutes and laws of the State of Illinois, in which State this policy was delivered to the insured by defendant, and in which the insured and the beneficiary then resided and continued thereafter to reside until the time of insured's death, policies of insurance are incontestable for any cause after they have been in force two full years from date of issue, except for non-payment of premiums and for viola-

tions of conditions in the policy relating to the naval or mili-
tary service in time of war; and this policy is, therefore, now
incontestable; but notwithstanding said statute defendant has
wrongfully refused to pay the same when payment was de-
manded, on the ground that said policy contains incorrect war-
ranties.

"Wherefore, plaintiff prays judgment against defendant for
the sum of fourteen thousand dollars and legal interest thereon
from said 14th day of September, 1910, and also for a further
sum of ten per cent of said amount and an attorney's fee of five
hundred dollars because of defendant's said unreasonable and
vexatious refusal to pay plaintiff's claim.

EXHIBIT A.

Life Annuity Disability Policy.

"THE PACIFIC MUTUAL LIFE INSURANCE COMPANY
OF CALIFORNIA.

"No. 1060317.

"EXHIBIT B.

"Accumulaion Transfer Certificate (Principal Sum) No. 1652107.

"THE PACIFIC MUTUAL LIFE INSURANCE COMPANY
OF CALIFORNIA.

"Accident Department.

"The increase provided under the 'Ten Per Cent Annual
Increase' clause of this policy shall be the same as if this
policy had been issued and dated the 6th day of February, 1906,
and the premiums thereon paid annually, subject, however, to
the provisions of this policy. Anything contained in this cer-
tificate shall not vary, alter or extend any other provision or
condition of this policy.

"Not valid unless countersigned by a duly authorized Agent
or Manager and attached to and made a part of policy bearing
No. 1063279, issued to Mr. Ira G. Rawn."

"Summons was duly issued and the return of the
sheriff is as follows:

"Return of Sheriff of Cole County, Mo., is as follows:

"Executed the within writ in the county of Cole, and State
aforesaid, on the — day of March, 1911, upon the within named
defendant, the Pacific Mutual Life Insurance Company, a cor-
poration, by delivering a true copy of the within writ, together
with a copy of the petition thereto attached, as certified to by
the clerk of the circuit court of the city of St. Louis, Missouri,
to Frank Blake, Superintendent of the Insurance Department
of the State of Missouri, he being the person authorized by
the law to acknowledge and receive and upon whom to serve
process issuing out of the courts in the State of Missouri, for

and in behalf of said defendant, under and by virtue of said section 7042 of the Revised Statutes of Missouri, 1909.

"Witness my hand this — day of March, 1911.

"HENRY A. HAGENER,

"Sheriff of Cole County, Mo."

"On the return day of the writ, to-wit, on April 5, 1911, your petitioner appeared specially in said court, and solely for the purpose of objecting to said court's jurisdiction over it, and filed its motion to quash the return of the sheriff and to dismiss said case on the grounds and for the reasons therein stated. Said motion was duly verified by affidavit, and among the reasons assigned therein why said court had and should take no jurisdiction were the following:

"First. Because the service of process in the manner made was insufficient to confer or obtain jurisdiction over this petitioner in said cause.

"Second. Because the bringing of the action in said court was an abuse of the jurisdiction of said court and a fraud on defendant.

"Third. That the purpose of the action was to harass, embarrass and oppress your petitioner and to deprive it of an opportunity to be heard in its defense, thereby depriving it of due process of law.

"Said motion to quash and to dismiss is in words and figures as follows:

"Comes not the defendant, the Pacific Mutual Life Insurance Company, specially appearing and limiting its appearance to the purposes of this motion and plea only, and respectfully prays the court to quash and set aside the service and return of the summons herein, to refuse to entertain jurisdiction thereof, and to proceed no further in the hearing and determination of the issues involved than to dismiss the petition, all for the reasons and upon the grounds hereinafter stated; and in support of said motion and plea, defendant respectfully alleges:

"First. That the cause of action is based upon a policy of accident insurance, a copy whereof is attached to the petition as 'Exhibit A;' that said contract of insurance was applied for and made and delivered in the State of Illinois, which

said State was and is the place of contract; and is an Illinois contract governed by the laws of Illinois.

"Second.   That Ira G. Rawn, to whom said policy was issued and with whom said accident insurance contract was made, was, at the time of the application therefor and of the delivery to him of said policy and at all times thereafter until his death on July 20, 1910, a citizen and resident of the State of Illinois, and not during any of said time a citizen or resident of the State of Missouri.

"Third.   That plaintiff Florence Willis Rawn was during all of said times and until July 20, 1910, the wife of said Ira G. Rawn, residing with him in said State of Illinois, and since July 20, 1910, has been, and is now his widow, and during all of said time and from thence hitherto has been and is now a citizen and resident of the State of Illinois and not at any time a citizen or resident of the State of Missouri.

"Fourth.   That prior to July 20, 1910, the said Ira G. Rawn had become involved and was engaged in a fraudulent conspiracy against the Illinois Central Railroad Company, of which he had been an officer and trusted official and agent, whereby he and his associate agents and co-conspirators defrauded the said Illinois Central Railroad Company out of many hundreds of thousands of dollars by fraudulent and extortionate charges for repairs, material and labor and supplies, which the said Rawn and his associates, representing said railroad company, caused to be done and furnished for said railroad company by a corporation and other agencies owned and controlled by said Rawn and his associates for their own profit and advantage, whereby fraudulent, excessive and extortionate prices were caused to be paid out and withdrawn from the treasury of said railroad company to the loss of said railroad company in many hundreds of thousands of dollars and the corresponding profit of the said Rawn and his associates, the full particulars whereof are not in the control of this defendant and cannot be obtained by this defendant in this cause for the reasons hereinafter more particularly designated.

"That at the time of the death of said Rawn criminal prosecutions were pending in the State of Illinois, in the city of Chicago, whereby some of the co-conspirators of Rawn were being criminally prosecuted for said fraudulent and criminal conspiracy, and the statements of said Rawn were being taken upon and in relation to his own connection therewith and knowledge thereof.

"That proof had been obtained by said railroad company of checks indorsed by said Rawn for large sums of money whereby the said Rawn had been paid a part of the said fraudulent proceeds of said criminal conspiracy; that said Rawn, realizing that his own connection with said fraudulent transactions could no longer be concealed and would immediately be

established, asked an adjournment of the taking of said statements to Wednesday, July 21, 1910, which adjournment was allowed; that on July 20, 1910, the said Rawn was killed by a bullet from his own revolver, fired by him, the said Rawn, with suicidal intention in his own home near Chicago, in Illinois.

"Fifth. That the main witnesses to facts immediately surrounding said suicide were inmates of the household of the said Rawn and members of his family who were and are under the influence and control of the plaintiff, and all of whom are residents of Illinois.

"Sixth. That by a settlement with the Illinois Central Railroad Company of the claim of said company against Rawn and his estate for the moneys fraudulently obtained by him from said company, by reason of and as the profits of Rawn from said fraudulent and criminal conspiracy and his share of the gains thereof, plaintiff secured the promise of the said railroad company to give no active aid or assistance to defendants in the suits on accidental policies, of which this is one.

"Seventh. That the said Ira G. Rawn, at the time of his said suicide, held policies of accident insurance, all taken out in the State of Illinois, of which the present is one, aggregating one hundred and thirty thousand dollars.

"Eighth. That after the death of said Rawn, suits were instituted in the State courts at Chicago, Illinois, upon all of said policies of accident insurance, including the one involved in this proceeding, which said suits are now pending and undetermined in said courts of Illinois. And a certified copy of the pleadings in the Illinois case, based on the policy sued on here, is hereto attached as Exhibit A, and made a part of this motion and plea.

"That said suit is between the same parties, involves the same subject-matter and is in all respects identical with the present action.

"Ninth. That after the courts of Illinois had acquired jurisdiction both of the plaintiff and defendant in this cause, and while the said courts possessed and now possess full power and authority to hear and to determine the controversy and all the issues involved therein, including the power to compel, for both plaintiff and defendant, by compulsory process, the attendance and evidence of all witnesses having any knowledge of facts bearing upon said suicide and other issues and defenses and preventing defendant from obtaining evidence thereof, plaintiff filed the present suit in this court and sued out the summons herein and caused the same to be served upon the Superintendent of Insurance of the State of Missouri, and to be returned as so served on defendant.

"Tenth. That, under the rulings and decisions of the Supreme Court of Illinois, which is the court of last resort in

that State, of which said rulings and decisions plaintiff at all times had and now has full knowledge, this defendant cannot enforce the attendance of the witnesses having knowledge of the facts constituting the motive for and the proof of the suicide of said Ira G. Rawn. All of said witnesses live in or near Chicago, Illinois. That this defendant cannot enforce the attendance of said witnesses either in this court or by commission issued from this court and directed to any officer authorized to take depositions within the State of Illinois where the witnesses may be found in said State, nor enforce the giving of evidence by such witnesses, or any of them, in any manner whatsoever in this case.

"That the testimony of such witnesses is material and necessary for the defense of this action in this court and that, without it, this defendant cannot establish its defense.

"That if defendant causes a commission for taking depositions of such witnesses to issue from this court and to be directed as above mentioned, under the said decisions of the courts of Illinois, no such person or officer above mentioned, or any court in said State, can compel obedience to subpoenas, or the giving of evidence, and no contempt will lie for disobedience to subpoena, or action for perjury for the willful giving of false testimony.

"Eleventh. That where the courts of the State in which the cause of action arose in which the parties reside, where the witnesses may be compelled to attend and testify, have first obtained full jurisdiction of parties and subject-matter, it is against public policy, contrary to the provisions of section 1, article 14, of the Constitution of the United States, to section 10, article 2, of the Constitution of the State of Missouri, and wholly at variance with the spirit and principles of the administration of justice and the law of the land, to permit the bringing or maintenance of another suit in the courts of another State where the evidence cannot be secured by compulsory process.

"Twelfth. That defendant is a citizen and resident of the State of California by reason of the fact that it was organized under the laws of that state and has its chief office at Los Angeles. That it is compelled, in order to issue policies and transact business in the State of Illinois, to comply with the local laws of Illinois, which become a part of its contracts of insurance with the citizens of Illinois; that in like manner it is compelled by the laws of Missouri governing foreign insurance companies to submit thereto in all contracts entered into with citizens of Missouri; that the laws of Missouri are not applicable to nor a part of its Illinois contracts, and are wholly different from the laws of Illinois. That the laws and public policy of the State of Missouri are against the defense of suicide

to actions based upon life or accident policies issued to citizens of Missouri, whereas the contrary is true of Illinois.

"That the plaintiff, a citizen of Illinois, suing for and asserting a claim based upon an Illinois contract, should not be permitted to serve summons on the Superintendent of Insurance of Missouri, or to have or obtain the benefit of local laws governing defendant in the exercise of its right to do business in the State of Missouri with the citizens of Missouri.

"That this defendant has a good and meritorious defense to this action based upon the fact of the suicide of Ira G. Rawn and upon the breaches of warranties and misrepresentations made by said Rawn in his application for said policy, but because of the matters and things herein set forth cannot obtain evidence to prove said defenses in this court.

"That the bringing and maintenance of this suit in this court is a fraudulent abuse of the jurisdiction of this court and designed by plaintiff for the purpose of preventing the defendant from making good its defenses to the cause of action asserted herein.

"Wherefore, by reason of the premises, defendant prays that the service and return of summons be quashed and set aside, and the petition and action dismissed."

This petition was duly subscribed and sworn to.

Thereafter plaintiff filed a motion to strike .the petitioner's motion from the files. That motion is in words and figures as follows:

Comes now plaintiff in the above-entitled cause and moves the court to strike from the files the so-called motion of the defendant to quash the summons and. return herein and to dismiss the petition for the following reasons:

(1). None of the various grounds set out in said so-called motion to quash and dismiss, even if proven true, would constitute in law any sufficient legal reason for quashing the return of service or for dismissing plaintiff's petition.

(2). The so-called motion to quash and dismiss alleges no irregularity or insufficiency whatsoever either in the writ of summons of the service thereof or the return thereon.

(3). The plea of another action pending in a foreign jurisdiction would not be good as a plea in abatement, even if regularly pleaded in an answer and established by evidence. A fortiori it is insufficient when pleaded in the form we have here.

(4). The matters and things alleged in this so-called motion to quash and dismiss respecting the suicide of the insured if they have any bearing on the rights of the parties

under the terms of the policy are properly matters of defense to be pleaded in an answer and not otherwise.

(5). The so-called motion to quash and dismiss sets out matters of fact which do not appear from the face of plaintiff's petition, and the truth of which plaintiff denies, which said matters of fact must therefore be tried upon evidence to be adduced. They cannot, therefore, be tried on a motion to quash or dismiss such as this.

(6). The statutes of this State, as construed by the courts, require the defendant to appear, when served with summons, and set out all of its defenses whether in abatement, in denial or in bar in one answer, and by this motion the defendant is seeking to evade these provisions of our Code of Civil Procedure.

(7). The motive which may have prompted plaintiff to file suit in this jurisdiction is wholly immaterial, so long as the law grants her the absolute right to file it here.

(8). Plaintiff cannot be held responsible for the alleged defects in the deposition laws of Illinois. She has neither enacted nor construed its stautes.

(9). The so-called motion to quash and dismiss does not allege that the policy sued on by its terms requires plaintiff to bring suit against defendant in the courts of Illinois.

(10). The Constitution of the United States, by article 4, section 2, guarantees to plaintiff and other citizens of Illinois the same rights to sue in the courts of Missouri that are enjoyed by citizens of Missouri. This motion of defendant seeks to nullify this provision of the supreme law of the land.

Wherefore plaintiff prays that this motion be stricken from the files and that the costs thereof be assessed against defendant, because it is frivolous and has no foundation or precedent in the established law and practice in this State.

On the 3d day of July, 1911, the respondent sustained respondents motion to strike the petitioner's said motion from the files, and thereby assuming to take jurisdiction over the petitioner in said case and refusing to quash the return of the sheriff and to dismiss said case.

Continuing:

"Your petitioner respectfully shows to this court that the respondent has no jurisdiction over your petitioner, the defendant in said case, that the assumption of jurisdiction thus wrongfully taken, if upheld and maintained, will work great and irreparable hardship

on your petitioner, that your petitioner will be deprived of the testimony of witnesses who reside in Illinois, upon whose testimony your petitioner must rely to establish the fact of the suicide of the said Rawn and the motives for such suicide, that plaintiff will be able to establish a prima facie case of liability with little or no trouble or expense, whereas defendant, your petitioner, will be put to great expense to attempt to obtain sufficient evidence to establish its defense, that whereas, the death of the said Rawn may be proven by one or more witnesses, the suicide of the said Rawn cannot be established except by the testimony of the many witnesses who can testify about the circumstances surrounding the death and the motive leading the said Rawn to commit suicide, all of which cannot be remedied by any other means than by the granting of the relief herein prayed for.

"Wherefore, your petitioner prays the remedy of the writ of prohibition to the said respondent, the Honorable J. Hugo Grimm, judge of said court, prohibiting him from taking or retaining any jurisdiction in said case; and to that end your petitioner prays that this honorable court issue a preliminary rule in prohibition (to the effect aforesaid) directed to respondent, requiring him to show cause, if any he have, with all convenient and reasonable speed, why a peremptory writ of prohibition should not be granted as herein prayed; that such other necessary and proper orders be made to protect the rights of your petitioner as aforesaid; and that a provisional rule to the effect herein prayed be furthermore made, staying any further proceedings in said case pending the final hearing and determination of the matters herein complained of by your petitioner."

Upon the presentation of this petition to the court, a preliminary rule in prohibition was issued and directed to the respondent, requiring him to show

cause, if any he had, why a peremptory writ of prohibition should not be granted as prayed.

In due time the respondent filed in this court the following return (formal parts omitted), viz.:

"Now comes respondent in the above-entitled cause and for his return to the preliminary order made by this court admits that he is and was the duly elected, qualified and acting judge of the circuit court for the Eight Judicial Circuit of Missouri, and judge of Division No. 1 of said court, and that on the 14th day of March, 1911, there was commenced in said court the suit of Florence Willis Rawn against the petitioner to recover the sum of $14,000; also that a writ of summons was issued by the clerk of said court for petitioner, and the said summons was served upon the Superintendent of Insurance for the State of Missouri and that thereafter said cause was assigned to Division No. 1 of the said circuit court, of which division respondent is judge; and respondent also admits the said petition in the suit of Florence Willis Rawn is in the form set out in the application filed by petitioner in this court. Respondent further admits that on the return day of said writ of summons the petitioner herein filed in said circuit court of the city of St. Louis a motion which it called a motion to 'quash and dismiss,' in the form set out in the application of petitioner herein. Respondent further admits that thereupon Florence Willis Rawn filed in said court a motion to strike from the files the aforesaid motion of petitioner to 'quash and dismiss,' which motion to strike from the files is in the form set out in the application to this court; and respondent admits that he sustained said motion to strike from the files on July 3, 1911.

"For a further return respondent says that at the time he sustained said motion to strike he filed in said cause a written opinion or memorandum setting out some of the reasons which induced him to sustain said

motion, which opinion is in words and figures as follows, to-wit:''

Then follows a written opinion filed by respondent, covering some ten pages of printed matter, sustaining said motion to strike out the motion to quash and dismiss.

The petitioner upon the pleadings asks for a peremptory writ of prohibition.

I. By reading the pleadings in this case, it will be seen that there are several issues of fact presented thereby which have not been settled by demurrer or admission, nor have they been established by any evidence. Notwithstanding that fact, counsel for the petitioner proceeds upon the theory that all the issues thus presented have been settled or established in its favor, while counsel for the respondent persistently deny many of the allegations of the petition for the preliminary rule. This alone should be a sufficient reason for denying the writ, but because of the importance of the case, we will dispose of it upon the supposition that the facts are as they are charged to be by the petition.

Assuming that the facts are, as contended for by the petitioner, then the question presents itself. Is the petitioner entitled to a peremptory writ of prohibition? We will answer this question later.

The position of counsel for the petition can best be stated in their own language, viz.:

''The facts are undisputed that Ira W. Rawn, the insured, and Florence W. Rawn, the beneficiary and plaintiff, were residents and citizens of Illinois at the times involved in these cases. It is not disputed that the policy sued on was executed and delivered in Chicago, Illinois, and that Rawn died in Illinois, where the policy is to be paid if the company is liable. It appears, therefore, on the record, that the insurance contract involved in the suit was made in Illinois, with a citizen of Illinois, to be performed in Illinois; that

the insured died in Illinois, and that plaintiff lives in Illinois. The question therefore arises: May actions be maintained in Missouri and, if so, has the circuit court jurisdiction; and is the service of process sufficient?''

Upon that statement of the case, counsel for the petitioner insist that the circuit court has no jurisdiction of the cause, for the reasons:

''(a) The service of process was insufficient; and

''(b) The courts of Missouri have no jurisdiction over foreign insurance companies in causes of action arising out of business done in other States with citizens of those States.''

In support of that insistence, counsel cite and rely upon the following among other authorities: Section 7042, Revised Statutes 1909; Lafayette Ins. Co. v. French, 18 How. (U. S.) 404; St. Clair v. Cox, 106 U. S. 350; Old Wayne Life Assn. v. McDonough, 204 U. S. 8; Hunter v. Mutual Reserve Life Ins. Co., 218 U. S. 1. c. 585; Berry v. Knights Templars' Indemnity Co., 46 Fed. 439; Diamond Plate Glass Co. v. Ins. Co., 55 Fed. 27; Rehm v. German Ins. Co., 125 Ind. 135; Sawyer v. North Amer. Life Ins. Co., 46 Vt. 697; Middough v. Railroad, 51 Mo. 520; Baile v. Equitable Fire Ins. Co., 68 Mo. 617.

The section of the statute before referred to reads as follows:

''Sec. 7042. Any insurance company not incorporated by or organized under the laws of this State, desiring to transact any business by any agent or agents in this State, shall first file with the Superintendent of the Insurance Department a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for and in behalf of such company, in all pro-

ceedings that may be instituted against such company, in any court of this State, or in any court of the United States in this State, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other State. Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent, shall be valid and binding, and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this State, although such company may have withdrawn, been excluded from or ceased to do business in this State, and in case such process is issued by a justice of the peace or other inferior court, the same may be directed to and served by any officer authorized to serve process in the city or county where said superintendent shall have his office, at least fifteen days before the return day thereof, and such service shall confer jurisdiction. Every such instrument of appointment executed by such company shall be attested by the seal of such company, and shall recite the whole of this section, and shall be accompanied by a copy of a resolution of the board of directors or trustees of such company similarly attested, showing that the president and secretary, or other chief officers of such company, are authorized to execute such instrument in behalf of the company; and if any such company shall fail, neglect or refuse to appoint and maintain, within the State, an attorney or agent, in the manner hereinbefore described, it shall forfeit the right to do or continue business in this State. [R. S. 1899, sec. 7991.]''

This section was enacted in the year 1885 (Laws 1885, p. 183) and amended section 6013, R. S. 1879, which repealed section 25, page 770, of Wagner's Statute of Missouri, 1872.

It must be conceded that the only mode by which a foreign insurance company can be served with pro-

cess in this State is by the method provided for in said section 7042. [Baile v. Equitable Fire Ins. Co., supra; Middough v. Railroad, 51 Mo. 520.]

Counsel for the petitioner insist that the true meaning of section 7042 is, that it requires every company which writes insurance in this State to appear and defend all cases arising out of such business, and none other. In other words, the design of the Legislature was to protect the citizens of this State, and none other, in all rights acquired by them under contracts made with them by foreign insurance companies. In short, it was never the intention to provide means by which foreign insurance companies could be sued in the courts of this State by non-residents on causes of action arising out of business transactions had with them in other States.

The case of Rehm v. Ins. Co., supra, cited by counsel for the petitioner does not support the construction placed upon this statute by them. That case was not a suit on a policy of insurance. The only thing the court there decided was, that the insurance statute of Indiana, providing for service upon the State Auditor in suits against a foreign insurance company, only applied to and authorized service upon the Auditor in suits based upon insurance policies.

Neither does the case of St. Clair v. Cox, supra, relied upon by counsel for petitioner, support their construction of the statute under consideration. In that case the Supreme Court of the United States held, and properly so, that a judgment rendered by a Michigan court against a foreign corporation was not entitled to full faith and credit in another court, when it did not appear anywhere in the record, either in the application for the writ, the return of the service, the pleadings, or in the findings of the court, that the corporation was engaged in business in that State.

The record in case of Old Wayne Life Ins. Co. v. McDonough, supra, cited by counsel for the petitioner, shows that the insurance company had not appointed the Insurance Commissioner, upon whom service was had, its agent to receive service of process. In that case the Supreme Court of the United States held, and properly so, that such service was invalid; and for that reason, that case is not in point here.

Nor is the case of Hunter v. Mutual Reserve Life Ins. Co., supra, an authority in support of the petitioner's contention. In that case service was had upon the Insurance Commissioner, after the insurance company had in good faith revoked his appointment and authority to receive service of summons for it, and after it had withdrawn from the State and had ceased to do business in the State, prior to the time of the institution of that suit. Under those facts the Supreme Court of the United States properly held that the service of summons upon the Insurance Commissioner was invalid.

The case of Olson v. Buffalo Mining Co., 130 Fed. 1017, cited by counsel for the petitioner, was based upon the statute of Washington, which in express terms provided that such service upon a statutory agent of a foreign corporation shall be had in ''any action or suit pertaining to the property, business or transactions of such corporation within the State of Washington.'' The suit there was for personal injuries sustained in another State, and not in the State of Washington; and the court there held that under the statute mentioned the service was bad, for the reason that the language of the statute in express terms limited the right to obtain service in that manner to suits based upon causes of action originating within that State, and not elsewhere. It is obvious that this case does not support the position of the petitioner, for the simple reason that our statute has no such limitation, but is general in its provisions, and

expressly authorizes such service in "all proceedings that may be instituted against the company in the courts of the State or any court of the United States in this State."

The last clause of the statute just quoted shows conclusively that the Legislature never intended that such service should be limited to suits based upon causes of action originating in this State between citizens of this State, for the reason that we know that practically all of the litigation begun in the Federal courts between individuals and foreign corporations, especially insurance corporations, is instituted by nonresidents of this State, and perhaps such litigation is bottomed as frequently upon causes of action arising outside of this State as it is upon those arising within our borders.

Doubtless the Legislature was familiar with the laws of the United States governing the institution of suits in the Federal courts, the character of the litigation authorized to be brought therein, as well as the required citizenship of the persons who may sue therein. And with that knowledge, it enacted the statute under consideration, which, as before stated, excludes the idea that it was the design of the Legislature to limit its application to residents of this State and to suits based upon causes of action arising within this State.

The remaining authorities cited by counsel for the petitioner, under this branch of the case, announce propositions of law substantially the same as those announced in the cases before considered, and for that reason we will pursue them no further.

The same questions that are here presented for determination, were presented to the circuit court, and in disposing of them, the learned trial judge, the respondent, expressed his views of the case in a written opinion, much of which I here quote and adopt as my views of the case. After stating the propositions pre-

sented for determination, which are substantially the same as previously stated by us, the respondent in the opinion mentioned said:

"Strictly speaking, neither of these questions can be raised by a motion to quash. Where the sheriff's return is irregular, or shows on its face that it has not been served in a manner to be effective, there, of course, a motion to quash is the proper mode of attacking it. [Thomasson v. Ins. Co., 217 Mo. 496.]

"Defendant's motion is not directed to the sheriff's return at all, and might properly be overruled or stricken from the record with the brief statement that the points presented in the briefs cannot be raised by such motion.

"Since the motion is designated a motion to quash I have taken the pains to examine the sheriff's return, and fail to find that it is in any wise irregular. The petition alleges that the defendant is a foreign insurance company doing business in the State of Missouri, and the sheriff's return sets out that the service was by virtue of section 7042, Revised Statutes 1909, which seems to me to be equivalent to a recital that the facts required by said section to exist in order to authorize service under it, really do exist. I therefore hold that there is no reason (and defendant's counsel have pointed out none) for holding the sheriff's return to be irregular or for quashing the summons on that ground. [Knapp, Stout & Co. v. Ins. Co., 30 Fed. 607.]

"As stated, the defendant's motion does not actually attack the sheriff's return, but requests the court to refuse to entertain jurisdiction of the case for the two reasons above referred to, based upon facts set out in defendant's motion.

"While the motion does not specifically or in terms charge that the court has no jurisdiction over the person of defendant, and while it does set up certain facts upon which it bases its contention that the

court could not entertain the cause, I am disposed to place a liberal construction upon the motion and treat it as sufficient to challenge the jurisdiction of the court over the defendant's person, and to assume that the facts as to the non-residence of plaintiff and defendant appear from the sheriff's return and upon the face of plaintiff's petition.

"True a motion to quash will lie only where the return itself is insufficient. Where the want of jurisdiction over defendant's person appears, not on the face of the return showing a defective service, but on the face of the petition, the question must be raised by special demurrer, and where the objection is based upon facts *dehors* the record (the return and petition), must be made by answer, that is, by a special plea contained in an answer, which may be joined with a defense to the merits without being regarded as waiving the latter. [Thomasson v. Ins. Co., 217 Mo. 495; Meyer v. Ins. Co., 184 Mo. 481; Wicecarver v. Ins. Co., 137 Mo. App. 250.]

"As already stated, the two questions presented by the briefs are not properly raised by the motion to quash. However, as a large part of the argument has been addressed to these questions, and inasmuch as plaintiff's counsel upon the argument admitted the facts of non-residence of plaintiff and defendant (although he did not admit the other facts alleged, viz., that the witnesses would refuse to testify by deposition in Illinois), I am disposed to consider the first point at this time. The plaintiff's motion to strike from the files does not necessarily admit the truth of the allegations of defendant's motion, because it might well be contended that defendant's motion be stricken out because the questions attempted to be raised by it cannot be raised by such motion—indeed, that is one of the propositions argued by plaintiff's counsel. In view of the admission by plaintiff I will consider this first question, because defendant, not

having pleaded to the merits, has not waived the objection that the court has no jurisdiction over its person, and could still present such question in a regular and proper manner by a count in its answer, or by demurrer, if the facts appeared on the face of the petition. To defer considering and passing upon this question, which it is clear is in the case and will be presented, would merely result in a delay which can well be avoided.

"The first question is: Has this court failed to obtain jurisdiction over the defendant by reason of the fact that both plaintiff and defendant are non-residents of the State, and substitute service was had upon the Insurance Commissioner?

"After an examination of the authorities cited by counsel (and some which were not cited), and after considering the matter fully, I have reached the conclusion that the service on the Superintendent of Insurance is sufficient to bring defendant into court, and that the court has jurisdiction over its person. The suit is upon a contract, and the action is clearly a transitory one, which may be brought in any jurisdiction in which a defendant may be found, or personal service had upon him. Since the plaintiff is a non-resident, she may sue the defendant in any county of the State in which personal service can be had upon it. [Sec. 1751, R. S. 1909; Bryant v. McClure, 44 Mo. App. 553.] Within the contemplation of the statute relating to service of summons upon foreign insurance companies, such companies are regarded as residing in each county in this State. [Meyer v. Ins. Co., 184 Mo. 1. c. 486.]

"That the defendant is a foreign insurance company, and that the summons in this case was served upon the Insurance Superintendent in the manner prescribed by section 7042, is conceded, and I assume it is also conceded that the defendant at the time of the service was doing an insurance business in the State

of Missouri, and had executed a power of attorney to receive service and delivered it to the Superintendent of Insurance.

"But while the service was had in the manner prescribed by the statute, defendant contends that the court has no jurisdiction over its person because the policy sued upon was not issued in the State of Missouri and, again, because the plaintiff is a non-resident, it being contended by defendant that the statutes authorize service upon the Superintendent of Insurance in suits against foreign companies only where the suit is brought by a resident of the State, or where the policy sued on was issued in this State.

"An examination of the statute shows that its terms are general, and authorize such service of summons in all suits brought against foreign insurance companies. I do not see that this court has any authority to limit or qualify the statute by reading into it words which would limit the right to serve a foreign company by service upon the Superintendent of Insurance to cases brought by resident plaintiffs, or those based upon contracts issued in this State. A foreign company can do business in the State of Missouri only upon such terms and conditions as the State may see fit to impose. If the State says to such company 'You may do business in Missouri only upon condition that you appoint the Superintendent of Insurance your agent to receive service of process in all cases brought against you in this State,' and the company accepts that condition, either expressly by executing the power of attorney, or impliedly by doing business in the State, then the company is clearly bound by such statute. The question simply resolves itself to an inquiry as to the true meaning of the statute. As I have said, section 7042 shows no purpose to limit its operation to the class of cases contended for by defendant. On the other hand, the purpose of the statute, as stated in the Meyer case, seems to have

been to make a foreign insurance company doing business here a resident of each county of the State, so that a plaintiff resident in St. Louis would not be required to sue a non-resident insurance company in St. Louis, but might sue it in any county in the State, which would be permissible only upon the theory that the defendant is a resident of such county.

"It has been claimed that this statute was enacted for the benefit of our own citizens and not for the benefit of non-residents. That is probably true of all our laws, but a non-resident minor child can clearly maintain an action for damages for the death of its father in this State caused by the defendant's negligence, . . . and that it is not the policy of our law to close the doors of our courts to citizens of other States. It is extremely doubtful that the Legislature could do so if desired. But clearly it has nowhere placed any limitation upon the right of non-residents to bring suits in the courts of this State.

"The same question raised in this case was raised in a Massachusetts case upon a statute almost identical in terms with that of this State, and the court decided in favor of its jurisdiction over defendant. [Johnston v. Ins. Co., 132 Mass. 432.]

"Several cases cited by defendant upon this phase of the case are deserving of very serious attention, that of Old Wayne Ins. Co. v. McDonough, 204 U. S. 8, being the strongest in its favor. But that case is readily distinguishable from the one at bar. There the suit was brought in Indiana upon a judgment which had been rendered in Pennsylvania, and it was necessary for the plaintiff to show that the Pennsylvania court had obtained jurisdiction over the defendant. The only evidence that the company had done business in Pennsylvania seems to have been the fact that it had issued the policy itself, and by the petition filed in the suit, both of which recited that the contract was made in Indiana. That judgment might

well be sustained on the ground that inasmuch as it was not shown that the insurance company had ever done business in the State of .Pennsylvania, it could not have been subject to the laws of that State, but the court went further and said that: 'While the highest consideration of public policy· demand that an insurance corporation, entering a State in defiance of a statute which lawfully prescribes the terms upon which it may exert its powers there, should be held to have assented to such terms as to business there transacted by it, it would be going very far to imply, and we do not imply, such assent as to business trans-acted in another State, although citizens of the for-mer State may be interested in such business.'

"In the case of Hunter v. .Mutual Reserve Life Ins. Co., 218 U. S. 575 (on appeal from 184 N. Y. 136), it was held that, as the insurance company had, as a matter of fact, and in good faith, withdrawn from the State of North Carolina and revoked the power of attorney of the State officer to ·accept process long before the plaintiff--had received an assignment of the policies sued upon, the service upon the Insurance Commissioner was invalid.  The Court of Appeals in New York in that case said: 'It may be assumed at once that if defendant, upon a fair construction of language and of its acts did continue generally to transact and carry on business of insurance in North Carolina after its purported revocation of its power of attorney and withdrawal from such State, the lat-ter should be held ineffectual to prevent a continuance of the authority of the insurance official to receive serv-ice of a summons.  The authorization by the company of service upon said official was a condition of its transacting business in said State, and so long as such transaction of business continued the company should not be allowed to escape the consequences of its agree-ment by any deceptive or apparent withdrawal.  We

do not, however, think that such was the true character of its acts.'

"There is an important distinction, which I think these cases clearly recognize, between the case of a foreign insurance company doing business in a State, in which it is subject to its laws, and such a corporation which has never done business in the State, or has in good faith discontinued its business and left the State."

The Supreme Court of the United States, in the case of Barrow Steamship Co. v. Kane, 170 U. S. 100, announced a very liberal policy regarding service of process upon foreign insurance companies, where they actually transact business in a State, even in the absence of a statute requiring them to submit to the jurisdiction of the courts of such State, as a condition precedent to such right. That was an action brought by a citizen of New Jersey in the circuit court of the United States held within the State of New York, against a foreign corporation, based upon a cause of action which arose in England. The corporation was doing business in the State of New York, and service of process was had upon one of its agents in that State. The defendants appeared specially, and demurred to the petition for the reason that it appeared from the face thereof that the court had no jurisdiction of the defendants or the subject-matter of the suit, as neither the plaintiff nor defendant was a resident of New York, and the cause of action sued on did not arise in that State. The court overruled the demurrer, and at the close of the plaintiff's case counsel for defendants moved to dismiss the suit for the same reason stated in their demurrer. That motion was by the court denied, and it certified to the Supreme Court this question of law: 'Had the Circuit Court of the United States jurisdiction to try the action and render judgment therein against the defendant?' The United States Supreme Court affirmed the decision of the cir-

cuit court, and the opinion contains an exhaustive discussion of authorities on the right of a non-resident to sue a foreign corporation on a cause of action arising out of the State where the suit is brought. The court held that the constant tendency of the judicial decisions was in the direction of putting corporations upon the same footing as natural persons in regard to jurisdiction of suits by or against them; that under modern decisions, even in the absence of a statute requiring foreign corporations doing business in a State other than were incorporated, to submit to the jurisdiction of the courts of that State on going into a foreign State, they impliedly submitted themselves to the jurisdiction of the courts of that State and were "found" within that State for the purpose of suit, the same as an individual.

We are, therefore, of the opinion that section 7042. Revised Statutes 1909, authorized the service made by the sheriff upon the defendant, the petitioner here, in the case of Florence W. Rawn against it, in the circuit court; also that the service of the sheriff was regular and legal in every respect, and that the circuit court properly refused to quash the service.

II. There is another equally valid reason why the service had on the petitioner in the case, Florence W. Rawn, against it, in the circuit court of the city of St. Louis, should not be quashed, and that is, the petitioner, the defendant there, clearly entered its general appearance in that case.

The motion filed by the petitioner in that case, not only asked that the service and return had therein be quashed, but it is also asked that the petition filed be dismissed because of matters of defense entirely outside of the record which it alleges do not exist, and as to which it tenders issues by a verified plea, and which, if heard upon their merits, would require the introduction of evidence to establish their truthful-

ness, which could not be done if the court had no ju-
risdiction over the person of the defendant. The mere
fact that the defendant tendered those issues, and
attempted to prove them by affidavit, by necessary im--
plication requested the court to assume jurisdiction
over its person, and over the issues thus tendered,
and to pass judgment thereon, which could not be
done without the court had jurisdiction over the par-
ties litigant and. the subject-matter of the suit.

The tender of those matters of defense or abate-
ment which do not appear in the record proper, and
which challenge the right of plaintiff to maintain an
action on this policy in this State, no matter how the
summons was served, would be a waiver of the right
to have the return quashed, even if such right had
never existed.

The foregoing observations have the support of
the uniform rulings of this and many other courts.

In the case of Newcomb v. Railroad, 182 Mo. 687,
1. c. 707, this court, speaking through Judge VALLIANT,
in discussing this question said:

"The defendant could have made a special ap-
pearance for the purpose, and moved to quash the re-
turn for the insufficiency appearing on its face, and
if the court had overruled the motion the defendant
could have preserved its exception and have with-
drawn, and if the court had then proceeded to render
judgment for the plaintiff the judgment would have
been reversed on appeal. But a plea to the merits is
a general appearance and after that the character of
the return is immaterial. There is no injustice in
requiring a party, in a matter of procedure, to make
his election and abide by his choice.

"Appellant says that under our system of plead-
ing it was bound to include in one answer every mat-
ter of defense it had; therefore, it did not waive the
plea to the jurisdiction by its plea to the merits. It
is true that under our system a plea in abatement is

not waived by a plea in bar in the same answer and the defendant must include all his defenses in one answer. But the insufficiency of this return was not a point to be presented by the plea at all; it was out of place in the answer.

"A question of jurisdiction may arise on the face of the return on the summons, or on the face of the petition, or by reason of some fact not appearing either in the return or in the petition. If it arises on the face of the return it is only a question of whether the defendant has been properly served; that is, met by a motion to quash the return; if it arises on the face of the petition, it is a question of law and is met by a demurrer; if it arises from some fact that appears neither in the return nor in the petition, it is presented by a plea.

"If the defendant had filed a motion to quash the return and it had been overruled and had then answered to the merits, could there be any doubt that the point was waived? Is there any difference in effect because it attempted to reach the defect in the return by plea? True, the plea attempted to put in issue the facts stated in the return, but that could not be done, as we have above seen, and all that was left of the plea was that the return was not sufficient.

"If the defendant was of the opinion that the return was not sufficient to bring it into court and had confidence in its own opinion, it could have remained away and let the plaintiff take his own course. That was a station in the progress of the case where the law requires a party to rely on his own judgment and take the risk of being sustained in the end; he may keep out if he chooses, but if he elects to come in and plead to the merits, he submits his person to the jurisdiction of the court, and will not be heard afterwards to say that he was not properly called into court. This ruling is in conformity to the previous decisions of this

court, as will be seen by reference to the cases cited in the brief for respondent on this subject."

This rule of practice was reaffirmed by the Supreme Court in the Thomasson case, 217 Mo. 485, and by the St. Louis Court of Appeals in the Wicecarver case, supra. In the Thomasson case the court quoted most of the foregoing extract from the Newcomb case and also said: "And if the defendant desires to stand upon the insufficient service of the writ in this case, its remedy was to move specially to quash the same, and if the motion was overruled then to withdraw from further appearance. But the defective service was waived by the general answer to the jurisdiction over its person."

The rules of law controlling a limited appearance to move to quash a service, and the effect of joining in that motion a motion to dispose of the case, is well stated in the case of Mahr v. Union Pacific Ry. Co., 140 Fed. 921. There the court said:

"The right to make a special appearance is not a substantial one inherently existing; it is a privilege allowed by practice, and it must be exercised under the rules of procedure. Whenever a litigant appears to deny jurisdiction over his person, which would otherwise exist but for the failure to pursue the methods prescribed by law for bringing him into court, he must confine himself to that particular branch of jurisdiction. It is a matter of indifference to him whether or not the court has jurisdiction over the subject-matter; so long as it has no jurisdiction over his person, it cannot in any way injuriously affect his interests. He must therefore be content to stop with the suggestion that the summons or notice, as the case may be, required by the law to be served, has not been served, and that the court is therefore not entitled to deal with him in the absence of such service. As to whether the court has jurisdiction over the matter embodied in the complaint he need give himself no con-

cern. If he does, in a transitory action, and enters upon a discussion of that question or makes a challenge as to that point, he waives the want of service and enters voluntarily into a controversy which goes to the merits, and thereby submits to the jurisdiction of the court over his person. If the action is transitory, it is triable in any competent forum where jurisdiction of the person may be obtained." [P. 923.]

"The defendant, in paragraphs 1, 2, and 4 of its motion, kept itself strictly within the rule relating to special appearances by objecting to the service, and, had it confined itself to that issue, it would have been entitled as of course, on the uncontradicted showing made, to an order sustaining the motion to quash the service of summons; but by objecting to the jurisdiction of the court over the subject-matter, and by failure to comply with rule 22, it made a general appearance." [P. 925.]

In Handy v. Insurance Co., 37 Ohio St. 366, the plaintiffs brought suit against the defendant, a foreign corporation, in the court of common pleas, in the State of Ohio, to recover for the loss of a vessel and its cargo. The policy was issued to its owners at Marquette, Michigan, and there is nothing in the record to show the plaintiffs were citizens of the State of Ohio. Summons was served upon an agent of the defendant, and defendant filed a motion to dismiss the action, for the reason stated: "That this court has no jurisdiction of the case, it appearing from the petition on file that said defendant is a foreign insurance company and that no part of the alleged cause of action arose in this State." The court overruled this motion, and the defendant duly excepted, and filed a demurrer on that ground. The demurrer was overruled, and defendant answered and judgment went for the plaintiffs. In passing upon that case, the Supreme Court of Ohio said: "The question presented is this: Can a party, who does not appear to be a resident of

Ohio, bring a suit, in the court of common pleas of any county in this State, against a foreign insurance company which has so far complied with the laws of our State as to be authorized to do an insurance business within the State, to recover an amount claimed to be due the plaintiff from the company, under the provisions of its policy of insurance issued in another State to a resident of that State upon property which was never in this State, and under which a loss had occurred and been settled for without the State, and acquire jurisdiction by the mere service of the summons upon the local agent of the company in the county where the petition is filed? See section 20 of the Act of April 27, 1872, as amended April 24, 1873 (Sayler's Stat. 2975). The laws of Ohio are for the protection and government of its own citizens and those doing business within the State; not for residents of other States in their contracts made out of the State.'' [P. 369.] ''And, indeed, if no summons had been issued in the case, the voluntary appearance of the defendant for the purpose of submitting to the court the sufficiency of the petition in its statement of the cause of action, which was done by the motion to dismiss for want of jurisdiction on the ground stated in the motion, would have constituted a waiver of the summons, as well as the service thereof.'' [P. 369.]

The court also held that questioning the jurisdiction over the subject-matter constituted a general appearance and waived any defects in service, saying: ''The true ground of objection as raised, first by the motion, and afterwards by the demurrer, was that the defendant, upon the facts stated in the petition, was not liable to be sued in that court, for the reason that the cause of action, or any part of it, did not arise in this State, nor was the defendant a corporation of this State.'' [P. 370.]

The court then held that there was jurisdiction, saying: ''Power to hear and determine a controversy is jurisdiction, and it is complete when both the sub-ject-matter of the controversy and the parties to it are properly before the court. In determining whether a given subject-matter is within the jurisdiction of a court, regard to the parties is not involved. The sub-ject-matter of the original action was a contract al-leged to have been broken by defendant. There is no question but that the court of common pleas had ju-risdiction of this subject-matter, without regard to the place where the contract was made or where it was violated.'' [P. 370.] The general jurisdiction of the court of common pleas, over the person of litigants, is not confined to residents or natural persons; non-residents of the State and foreign corporations are as much subject to its jurisdiction as are residents and domestic corporations. Except in actions of a local nature, our courts are open to all who may seek relief therein, against anyone who can be reached by its pro-cess. We know of no principle that will exempt a foreign corporation, which voluntarily comes into this State, from liability to answer any complaint which may be preferred against it in the courts of the State, that would not exonerate natural persons under like circumstances.'' [P. 370.] ''Any foreign corporation which may be found in this State may be sued in any county of this State, in any court having jurisdiction of the subject-matter of the suit.'' [P. 371.]

According to the rulings announced in these cases, there can be no question but what the defendant en-tered its general appearance in the case, by pleading the matters in defense or abatement, as previously mentioned. That appearance gave the circuit court of the city of St. Louis full and complete jurisdiction over the person of the defendant, the petitioner here, and the subject-matter of the suit.

III.   Counsel for the petitioner strenuously contend that, even though it be conceded, or held by this court, that the circuit court of the city of St. Louis acquired jurisdiction over the person of the petitioner and the subject-matter of the suit, by either or both of the methods stated in paragraph one and two of this opinion, nevertheless this court should decline to entertain that jurisdiction, for the reason that, by so doing, a great injustice would be visited upon it.

If we correctly understand the position of counsel, it is this:   That under the laws of the State of Illinois, after the dismissal of the plaintiff and practically of all of the witnesses in the case, it will be impossible for the petitioner to compel the witnesses to appear in the courts of this State and testify in the cause, or to compel them to give their testimony in the form of depositions in that State.   That is true, it is contended, because the laws of Illinois do not require witnesses in that State to obey the process of the courts of any other State, nor to give depositions in that State, in a cause pending in the court of another State, in obedience to a commission issued from such court.

Predicated upon that contention counsel for the petitioner further insist that retaining jurisdiction of the cause and trying the case in this State, under the circumstances stated, would be practically a denial of due process of law, and that by declining jurisdiction no wrong would be done the plaintiff, nor would any violence be done to the principles of comity existing between the States of Missouri and Illinois.

In passing it may not be out of place for us to ask the question, How do counsel for the petitioner know that the witnesses residing in the State of Illinois would not obey the process of the circuit court of the city of St. Louis, or that they would decline to give their deposition in pursuance to a commission and subpoena issued therein?   The record does not show that such a subpoena had ever been issued for

them, or that they had ever been requested to appear and testify before the court, or a commissioner authorized to take depositions.

Even if such a showing was a sufficient reason for this court to decline jurisdiction of the case, clearly in the absence of such showing this court would be wholly unjustified in declining jurisdiction on that account.

Returning to the question in hand. Concede without argument that the plaintiff would not be seriously injured by our declination of jurisdiction over the cause, yet we are unable to see any probative force in that fact which would justify or authorize this court to close its doors against her on that account. The same argument would apply equally well where all the parties to such a suit resided in this State, and where the witnesses or some of them resided in the State of Illinois or some other State.

It would be a strange ruling indeed for us to hold that under such a state of facts residents of this State could be deprived of the right to sue in the courts of this State, simply because a part of or all of the witnesses in the case reside in the State of Illinois or elsewhere.

There is absolutely no merit in this insistence.

The contention that the plaintiff's right to sue in the courts of this State rests on comity, will receive notice here. Counsel for petitioner cite many cases lending support to their contention, some of which were decided by some of the most respectable courts of the country. In fact this court and the courts of appeals of this State have so held in a number of cases; but upon an examination it will be seen that they were decided prior to the enactment or amendment of the statutes of this State governing this matter.

Prior to such enactments it was generally considered and understood that the right of a non-resi-

dent of this State to sue on a cause of action arising in some other State, in the courts of this State, rested purely upon comity, and that our courts could, in any case where they deemed it wise and proper, decline to assume jurisdiction over or to try the case. But since the enactment of section 1736, and the amendment of section 1737, Revised Statutes 1909, such right of a non-resident no longer rests solely upon principles of comity, within the broad meaning of that word. Those sections are binding upon all the courts of this State, and whenever a suit is brought in any court of this State, which is embraced within their provisions, no court has the legal right to decline jurisdiction over it or to try it, as it had prior to such enactments.

Those sections read as follows:

"Sec. 1736. Whenever a cause of action has accrued under or by virtue of the laws of any other State or Territory, such cause of action may be brought in any of the courts of this State, by the person or persons entitled to the proceeds of such cause of action: Provided, such person or persons shall be authorized to bring such action by the laws of the State or Territory where the cause of action accrued.

"Sec. 1737. Whenever any cause of action has accrued under or by virtue of the laws of any other State or Territory, and the person or persons entitled to the benefit of such cause of action are not authorized by the laws of such State or Territory to prosecute such action in his, her, or their own names, then, in every such case, such cause of action may be brought and prosecuted in any court of this State by the person or persons authorized under the laws of such State or Territory to sue in such cases. Such suits may be brought and maintained by the executor, administrator, guardian, guardian *ad litem,* or any other person empowered by the laws of such State or Territory to sue in a representative capacity."

These statutes were under consideration in the case of Newlin v. Railroad, 222 Mo. 375, and the court there held that these statutes were founded upon comity, and opened the doors of our courts to causes of action accruing under the laws of sister States. Meaning of course, that the doors were not opened at the discretion of the court, as was formerly the case, but mandatory, in harmony and in keeping with section 2 of article 4, and section 1 of the Fourteenth Amendment to the Constitution of the United States, which reads as follows:

Sec. 2, Art. 4: "The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States."

Sec. 1, Fourteenth Amendment: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

By reading these two constitutional provisions together, it will be seen that the latter is much broader, in many particulars, than the former; and this is also true regarding citizenship. By the former nothing was said about citizens of the United States, while the latter in express terms makes all persons born in the United States or naturalized in pursuance to its authority, citizens not only of the State in which they reside, but also citizens of the United States.

The last section also provides that no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, which of course includes all of the citizens of all of the States, and the Supreme Court of the

United States has respeatedly held that the latter clause includes corporations, whenever engaged in interstate commerce, or whenever legally authorized to do business in any such State or States. That being true, the Supreme Court of the United States in speaking of the rights of a citizen of Massachusetts to sue in the courts of New York, in the case of Cole v. Cunningham, 133 U. S. 1. c. 113, and 114, said: "The intention of section 2 of article 4 was to confer on the citizens of the several States a general citizenship, and to communicate all the privileges and immunities which the citizens of the same State would be entitled to under the like circumstances, and this includes the right to institute actions. The fact of the citizenship of Butler and Hayden did not affect their privilege to sue in New York and have the full use and benefit of the courts of that State in the assertion of their legal rights."

That court has also repeatedly held, under the constitutional provisions before mentioned, that any citizen of the United States or of any State thereof, may sue in the courts of any other State, wherever a citizen of such State may do so under the laws thereof. That court in discussing this question in the case of International Textbook Co. v. Pigg, 217 U. S. 91, l. c. 111, used this language: "This court held in Chambers v. Baltimore & Ohio Railroad Co., 207 U. S. 142, 148, that a State may, subject to the restrictions of the Federal Constitution, 'determine the limits of the jurisdiction of its courts, and the character of the controversies which shall be heard in them.' But it also said in the same case: 'The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise

extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution.' "

The same question came before this court in the case of International Textbook Co. v. Gillespie, 229 Mo. 397. There we quoted with approval the foregoing language of the Supreme Court of the United States, and in pursuance thereto, held: "(c) That where a foreign corporation has a valid cause against a citizen of this State it may sue said citizen thereon in the courts of this State, provided a citizen of this State might do the same, notwithstanding the provisions of said section 1026 to the contrary. [Chambers v. Railroad, 207 U. S. 142, 148; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631.]" The same identical question was decided in the cases of the United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, and in Roeder v. Robertson, 202 Mo. 522.

Both the Federal courts and this court in the cases cited, and in many more, have uniformly held that, whenever a non-resident or a foreign corporation has a valid cause of action under the laws of this State or under the laws of any other State, he or it may sue thereon in the courts of this State, provided legal service can be had upon the defendant, and provided, further, that a citizen of this State, under its laws, is authorized to sue in our courts on a cause of action similar to the one sued on by said non-resident or foreign corporation; and that, too, despite a statute of the State denying to such corporation such right to sue.

Those rulings are based upon the ground that, under the constitutional provisions previously mentioned, all citizens of the United States are entitled to all the privileges and immunities which are granted by the laws of any State to her own citizens, as previously stated; and that any statute of a State which denies

such right of such person or corporation to sue in the courts of such State is violative of said constitutional provisions and is therefore absolutely null and void.

That is not only the law as announced by those courts, but it was correctly so announced. It would be both unjust and intolerable for one State of the Union to possess the power and authority to enact a valid statute closing the doors of its courts to citizens of the United States, or of other States, and deny to them the right or privilege of suing in the courts thereof, while the citizens of such State enjoy that right or privilege. To so hold would be not only to nullify the spirit of the provisions of the Federal Constitution previously mentioned, but the letter thereof as well.

While, as previously stated, counsel for the petitioner cite some respectable authorities holding that the Legislature and courts of a State possess such power and authority, upon an examination of them it will be seen that they were decided solely upon the principle of comity, and the constitutional provisions mentioned were not considered, consequently, they have no binding effect upon this court.

Having thus seen that the doors of our courts under the law of comity, the statutes of this State as previously quoted, and the constitutional provisions before mentioned, are ever opened to all citizens of the United States and the citizens of the various States to sue upon any valid transitory cause of action which might be sued upon in our courts by a citizen of this State, it only remains for us, in this connection, to ascertain whether or not the cause of action of Mrs. Rawn, the plaintiff in the case against the petitioner, is a valid transitory cause of action, and could a citizen of this State sue in our courts on a similar cause of action.

It is not only conceded by all parties to this litigation that the policy of insurance sued on is a valid

subsisting contract, that is, there is nothing immoral or unlawful about a contract of insurance in general, nor about this one in particular, but its validity is charged by both parties in the pleadings. But independent of those concessions, the validity of such a contract of insurance could not in our opinion be seriously questioned. All of the decisions of the courts of the various States, as well as those of the United States, hold such contract to be lawful and binding.

We, therefore, have no hesitancy whatever in holding that the policy sued on is a valid contract, that is, there is nothing immoral about it, nor is it prohibited by any law.

Regarding the transitory character of an action based upon such a policy, there can be no question but what it is of that character. No court in Christendom holds to the contrary, insofar as we have been able to find, but the conclusions of all the authorities are to the effect that such suits are transitory in character. We must therefore hold this action to be one of that character.

Attending the question, could a resident of this State sue on a similar policy to the one in suit, issued under similar circumstances?

We apprehend that even counsel for the petitioner would not advance so bold a proposition as that; but if they should so do, it would be utterly untenable, for the simple reason that the courts of this State were created by her citizens, primarily for their own use, and, secondarily, for the use of those who may sue therein, under the laws of the United States, or those of comity. To compel a citizen of this State under like circumstances to go to Illinois against his will and sue on such a policy, issued there, when service might be had here, would be an outrage, and unwarranted by any authority that we have been able to find.

We are, therefore, not only of the opinion that the plaintiff may maintain her action in the courts of this State, but we are also of the opinion that under the statutes of this State previously quoted, and the provisions of the Federal Constitution before mentioned, the courts of this State are compelled to entertain jurisdiction thereof, and to try it according to law.

IV. There are a number of other points made and presented to this court by counsel for the petitioner, and by counsel for petitioners in several other cases similar to this, all of which were argued and submitted together.

We have carefully considered all of those cases and questions, and have duly investigated all of the authorities cited by counsel in support thereof, and find that those questions only bear indirectly upon the propositions here determined, and therefore are not controlling, and that they have no independent force sufficient to justify a prolongation of this opinion in a separate consideration of each. And none of the authorities cited by counsel in any of those cases lend any new support to a conclusion different from that previously announced herein.

We are, therefore, of the opinion that the peremptory writ of prohibition should be denied, and that the preliminary rule heretofore issued should be quashed. It is so ordered.

All concur except *Valliant, C. J.,* and *Graves, J.,* who dissent.


DISSENTING OPINION.


GRAVES, J.—Upon more mature deliberation I am forced to dissent from the opinion of the majority *in toto.* At first I was inclined to the view that the pleading filed by relator in the circuit court was suffi-

cient to enter its appearance in the case there pending and thereby confer jurisdiction of the person. Further reflection upon the question leads me to the opinion that this pleading when considered in all its allegations and bearings only amounts to a challenge to the jurisdiction of the circuit court, specially made, and thus being a special. appearance to challenge the jurisdiction, should not be held to be such an appearance as will confer jurisdiction over the person. I therefore dissent as to the ruling made by paragraph two of the majority opinion.

Nor do I concur in that part of the opinion which says that it is obligatory, under the Federal Constitution, for the courts of this State to assume jurisdiction over causes of actions arising in other jurisdictions. Such action of our courts is governed by comity and not by statutory law. Neither do I concur in the views expressed to the effect that under our own statutes the courts of this State are so obligated. To my mind the statutes referred to were not passed for that purpose and do not go to that extent.

Neither do I believe section 7042, Revised Statutes 1909, charges our courts with the duty of hearing a case such as is now pending in the court of the respondent Grimm in the city of St. Louis. That section compels foreign insurance companies doing business in this State to make our State Superintendent of Insurance an agent to accept service of process. I believe that this section only confers jurisdiction upon our courts to hear and determine controversies growing out of insurance contracts made in this State, whilst a foreign insurance company is doing business in this State under a license from the State. It is said in the opinion by my learned brother that there is no limitation in this statute, and hence cases from other jurisdictions where there is a limitation in the statute are not in point. I think the statute, when considered as a whole, has a limitation. I think from its language

there can be gathered a clear legislative intent to limit the jurisdiction of courts to actions upon contracts made in this State. Note the language: "Service of process as aforesaid, ·issued by any such court, as aforesaid upon the Superintendent, shall be valid and binding, and be deemed personal service upon such company, *so long as it shall have policies or liabilities outstanding in this State.*" This follows the language emphasized by my brother, and to my mind characterizes the kind of litigation to which foreign insurance companies can be called upon to respond in our courts. In other words, it fixes a limitation of the kind of causes over which our courts can assume jurisdiction. The statute specifically refers to policies *"outstanding in this State."* It is true that this clause refers to a time when such company has withdrawn from the State or is no longer doing business in the State, but it also refers to contracts made when in the State. The policies above mentioned in the statute are policies issued when the company was in the State. The question then arises, why preserve this method of service after the company has left the State and limit it to cases upon policies outstanding in this State only, if the previous portion of the statute referred to all kinds of actions whether upon contract in this State or contracts made out of this State?

To my mind the substituted method of service provided for in this statute only applies to actions arising upon contracts made in this State, and not to actions upon contracts made out of this State. In other words, the statute limits the class of cases in which this kind of service can be effectively had, and the case pending in respondent's court is not one of the class, if the averments in the complex motion are true. How the relator may now avail itself of the situation, with jurisdiction over its person having been decided by the majority, may be a question, but not one for

discussion at this time.   To do so would be but to suggest to counsel how to try their cases.

For these reasons, somewhat hurriedly drawn, I · dissent in this case, as well as in those which follow it upon the questions discussed. *Valliant, C. J.*, concurs in these views.